[No. 2,822.]

## ALEXANDER R. WALSH v. GEORGE A. HILL, JENNINGS T. SHELBY, L. M. BURSON, AND A. E. FRASER.

FINDING AGAINST EVIDENCE—TESTIMONY CONTRARY TO STIPULATION.— Where a finding of fact was supported by the testimony of only one witness, and his testimony, besides being open to suspicion on other grounds, was directly contradicted by the stipulation of the parties attached to the statement: *held*, that such finding was against evidence.

POSSESSION OF SPECIFIC LAND WITHIN LARGE INCLOSURE.—A general inclosure of a large tract of land is not sufficient to constitute an actual, exclusive possession of a specific parcel within it, when it appears that much of the land within the inclosure is not claimed, and much of it is in the actual occupancy of parties claiming and holding adversely.

APPEAL from the District Court of the Third Judicial District, Alameda County.

This was an action of ejectment for a tract of about twenty acres of land, on what is known as the "Potrero Nuevo," in the City and County of San Francisco. It was originally commenced in the Twelfth District Court, but was afterward, on account of the disqualification of the San Francisco Judges to try Potrero cases, transferred to the Third District Court of Alameda County. There having been findings and judgment for plaintiff, and motion for new trial overruled, defendants Shelby, Burson, and Fraser appealed.

The other facts are stated in the opinion.

*Walter Van Dyke*, for Appellants.

*Shafter, Southard & Seawell,* for Respondent.

By the Court, SPRAGUE, J.:

On the former appeal of this case (38 Cal. 481), two points were settled: First—That the deed from Crowell to Mason, Bensley, and Himrod, of 15th December, 1853, embraced the land in controversy. Second—That neither plaintiff nor those through whom he derives title, prior to the commencement of this suit, as shown by the evidence on the former trial, ever had constructive possession of any portion of the demanded premises. The question of actual possession in plaintiff or his grantors, beyond the half acre leased by Mason to Garagnon in 1861, was not passed upon by this Court, as the Court below had not found such actual possession, but constructive possession, of the residue of the entire tract described in the deed, by virtue of this half-acre lease and the entry of the tenant into the actual possession of the leased premises.

On the retrial, it was " stipulated and agreed that the testimony and proceedings in the former trial should be considered as taken and had in this trial, as the same appears in the printed transcript on said appeal, and on file herein, the same as in the former trial, * * * with permission to either party to introduce additional testimony."

The cause was tried before the Court without a jury. Additional testimony was introduced by each party, and the Court made special findings of facts, and rendered judgment against defendants Benson, Shelby, and Fraser, and in favor of plaintiff, for all that portion of the tract of land described in the complaint south of Mariposa street, from which judgment, and also from a subsequent order of the Court denying said defendants' motion for a new trial, comes this appeal.

The points upon which appellants rely on this appeal are: First—That " the testimony was insufficient to support the

findings; that in August, 1854, or at any other time, Mason, Bensley, and others leased to Snow and others, or to any one, the land claimed by them within the inclosure, so far as relates to the Shelby tract, or the land in controversy, or that the parties mentioned in said lease ever went into the possession of the Shelby tract, or land in controversy, or were on said tract in any manner or form;" and that "the evidence, on the contrary, shows that the said pretended lease does not cover or include any portion of the Shelby tract or land in controversy." Second—That "the evidence fails to show that plaintiff and his cotenants, Bensley and Mason, were ever in the actual possession of the Shelby tract or land in controversy, or that they claimed the same in good faith."

The findings of the Court to which the above exceptions are directed were the seventh and tenth, which are as follows:

"Seventh—On the 18th of August, 1854, said Mason, Bensley, and Himrod executed and delivered to one H. A. Snow, A. L. Brewster, Meredith Brier, and W. S. Mann a lease of the land claimed by them within the said inclosure. These parties entered upon the land under the lease, and occupied a house upon it known as the Farrington, or Ludlum, house. This house was not upon the land in controversy, but was located to the west of it, and within the general inclosure of land claimed by Mason, Bensley, and Himrod. The parties did not cultivate, improve, or use the land for any purposes. They were generally armed, and occupied the house for the purpose of keeping possession of the leased premises for their lessors, and to keep squatters off of them, and to keep up the fences. In this way they occupied the house for about a year."

The ninth finding, which I have inserted for the purpose of illustrating the tenth, is as follows:

"Ninth—In August, 1861, Mason leased part of the land in controversy to one Garagnon, for the term of one year, with the privilege of four years. The tenant immediately entered into actual possession of the leased premises which lie north of the described road, and inclosed the same with a substantial fence, and erected on them a tannery; and he and his grantees under him have since continued to occupy the same, and are still in the occupation of them as tenants of Mason, Bensley, and the plaintiff. In addition to which, Mason and Bensley, and their tenants for them, have kept the eastern line of fence in repair until 1862."

This is the lease and actual possession under it of a part of the premises described in the Crowell deed, and in the complaint from which the Court, on the former trial, found that Mason, Bensley, and plaintiff were in the constructive possession of all the land described in the deed which includes the Shelby tract (the land in controversy) lying south of the "described road." This finding, on the former appeal, was by this Court decided erroneous.

The tenth finding, on the retrial, is as follows:

"Tenth—The remainder of said tract, south of the described road to its cross-ditch, was not used for any purpose by the plaintiff or his cotenants Mason and Bensley, but they claimed it in good faith under the deed to them from Crowell, and under this claim of right they continued in actual possession of the premises in controversy by the inclosure, and acts which I have described, from January, 1854; and the plaintiff, as grantee of said Himrod, also continued in such actual possession until August, 1862; which the defendants Benson, Shelby, and Fraser entered without right or title into and upon said tract of land described in the complaint, lying south of the road running near or on the line of Mariposa street, and ousted the said plaintiff and his cotenants, Bensley and Mason, therefrom."

The facts, as I understand them from the findings and evidence not controverted, are briefly as follows: In June, 1852, Farrington and Ludlum, having purchased a brick-yard from one Wire, located on what is known as the Potrero Nuevo, in the City and County of San Francisco, undertook to locate a possessory or preëmption claim of one hundred and sixty acres, including the brickyard, by making a description of the land so claimed, and recording the same in the Recorder's office, with a plat thereof. This one hundred and sixty acres so located by Farrington, it is agreed by the parties to this suit, "was bounded on the west by a line on or near and parallel to Potrero avenue, and on the south by a line on or near and parallel with Solano street, and on the east by the westerly line of the tract in controversy. Its northern boundary was Mission Creek."

Some time prior to September, 1853, one Crowell had taken possession of the eastern portion of the Farrington and Ludlum claim, claiming the same adversely to Farrington and Ludlum, under, as he claimed, a deed to him from Roberts and Lange, dated June 3d, 1851. This deed from Roberts and Lange to Crowell, embraced a tract of land off the eastern portion of the Farrington and Ludlum claim, sixty-six and two thirds rods wide, and extended from Mission Creek on the north eight and one third rods south of the south line of the Farrington and Ludlum claim. It does not definitely appear from the evidence when Crowell entered upon this land, whether before or after the record of the Farrington and Ludlum claim, or whether he entered under his deed from Roberts and Lange; but it definitely and conclusively appears that on and for some time prior to the 15th December, 1853, and as early as September 1st, 1853, Crowell and several other parties claiming under him were in the actual occupation of portions of the land covered by the Roberts and Lange deed, holding and claiming the same adversely to Farrington and Ludlum.

In September, 1853, there was a piece of vacant, unoccupied land, of about twenty acres, between the eastern boundary line of the land covered by the deed of Roberts and Lange to Crowell, and the western boundary line of land in the occupation of one Piercy, no part of which was covered by the Farrington and Ludlum claim. During this month Crowell made claim to this piece of land, and, as evidence of his claim, marked the boundaries thereof by running a plow furrow or small ditch along Piercy's west line from the bay southerly about one hundred and forty rods; thence easterly about ten rods to a skeleton fence, which before that time had been constructed by some party not disclosed by the evidence, which at that time ran from the point where the ditch intersected it; thence northerly along or near the easterly line of the Farrington and Ludlum claim to the bay or Mission Creek. At this time one Ellis and some others, claiming under Crowell within the boundaries of the Farrington and Ludlum claim, had inclosed the parcels claimed by them.

On the 15th December, 1853, Crowell conveyed by deed the lands described in the complaint to Bensley, Mason, and Himrod. The land described in this deed included the land so taken up by Crowell in September, 1853, and a small parcel of the northeast portion of the land described in the deed from Roberts and Lange to him of June 3d, 1851. At this time no portion of the land so taken up by Crowell had ever been occupied, cultivated, or improved by him, nor had any acts been performed by him to evidence a possession thereof, other than the construction of the small ditch on its eastern and southern boundaries, hereinbefore referred to. Some five days after this purchase from Crowell by Bensley, Mason, and Himrod, some of the grantees (it does not distinctly appear whether all three joined) purchased an undivided interest in the Farrington and Ludlum claim, and immediately thereafter Bensley,

Mason, and Himrod commenced the construction of a substantial post and board fence from the bay southerly along the east line of their purchase from Crowell, which was along the west line of Piercy's claim, near and along the small ditch theretofore constructed by Crowell; and in January, 1854, had extended the same south the whole extent of this easterly line to the ditch on the south line, and continued it in the same direction a short distance further south, until it connected with a line of fence which had been previously built (but when or by whom built does not appear) running from the point of intersection west and north to Mission Creek. And these last lines of fences and Mission Creek and the Bay of San Francisco, with the eastern line of fence so built by Bensley, Mason, and Himrod, formed a general and substantial inclosure for the tract of land described in the complaint—the Farrington and Ludlum claim; the tract described in the deed from Roberts and Lange to Crowell, and also a tract of from twenty to thirty acres immediately south of the Farrington and Ludlum tract. Mason, Bensley, and Himrod kept the eastern line of this general inclosure in repair up to 1862, the time at which appellants entered upon the south half of the land described in the deed from Crowell to Mason, Bensley, and Himrod; but other portions of the fence forming this general inclosure were broken and dilapidated, and not kept up or in repair so as to form an inclosure after January, 1856. The tract of land in controversy, occupied by appellants, embraces that portion of the land described in the complaint and in the deed from Crowell to Mason, Bensley, and Himrod, which lies south of a public road which has crossed the tract, running east and west, since 1853, nearly on the line of Mariposa street. The plaintiff in this case is the successor in interest of Himrod, the cotenant of Bensley and

Mason in the land purchased from Crowell, as hereinbefore stated.

On the former trial, the plaintiff gave in evidence a lease from Mason, one of his cotenants, to one Garagnon, made in August, 1861, of a small parcel of the tract purchased from Crowell, embracing one half acre, located on the bay, north of the above described public road, and proved that Garagnon took immediate, actual possession of the leased premises, built a tannery thereon, and that Garagnon and his assignees had continued to occupy the leased premises ever since. The effect of this lease and occupancy of the lessee under the same were disposed of on the former appeal. On the retrial, plaintiff introduced and read in evidence, against objections of defendants, a lease made by Bensley, Mason, Himrod, Dumarthray, Farrington, and Webster, as lessors, to Snow, Brewster, Brier, and Mann, as lessees, dated August 18th, 1854, of lands described as follows: "All that certain tract or parcel of land lying and being in the City of San Francisco, being part of the tract known as the 'Potrero Nuevo;' that is to say, the tract of land known as the Farrington claim, formerly the Farrington and Ludlum claim, as the same is shown upon a map of said tract on record in the office of the County Recorder of the County of San Francisco. Also, all that tract of about twenty acres lying southerly of and adjoining the said last mentioned tract, the said tracts of land being now closed by a substantial fence."

Plaintiff then introduced evidence tending to show that the lessees immediately entered under the lease, and occupied a house situated about the center of the Farrington and Ludlum claim, called the Ludlum house, and occupied the same about one year, keeping the fences forming the general inclosure heretofore described in repair. As to what these lessees did under said lease, the Court below finds as follows: " The parties did not cultivate, improve, or use the lands for

any purposes.   They were generally armed, and occupied the
house for the purpose of keeping possession of the leased
premises for their lessors, and to keep squatters off of them,
and to keep up the fences.   In this way they occupied the
house for about a year."

For the purpose of showing that the lands described in
this lease covered and embraced the land in controversy,
plaintiff called as a witness Frederick Mason, one of the
lessors named in the lease, who testified that "at the time
this lease was made, this (meaning the land conveyed to
himself, Bensley, and Himrod, by Crowell, in December,
1853) was the only land answering the description of the
twenty acres lying southerly of and adjoining the Farrington
claim;" and on further examination, the same witness testi-
fied as follows:   "There was no other land, except this in
controversy, answering the description of the twenty acres.
*   *   *   At the time of the execution of this lease, I con-
sidered this tract in controversy as lying south of the Far-
rington claim.   The lessees did not live on this land; they
lived in the Farrington house; they did not put any improve-
ments on the tract in controversy.   The west line of the tract
in controversy, which is the east line of the Farrington claim,
runs nearly north and south."

This is the only evidence contained in the records tending
to show that this lease of August 18th, 1854, embraces the
lands in controversy.   In the statement on motion for a new
trial, which was agreed to and signed by the attorneys of the
respective parties as correct, occurs the following:

"It was shown by diagrams, and admitted, that the tract
known as the Farrington and Ludlum claim, as the same is
shown upon a map of said tract on record in the Recorder's
Office of the County of San Francisco, was bounded on the
west by a line on or near and parallel to Potrero avenue, and
on the south by a line on or near to and parallel with Solano

street, and on the east by the westerly line of the tract in controversy; that Crowell, John Brewster, and others, holding under Crowell, occupied a strip of the eastern part of said Farrington claim, and bordering the tract in controversy on the west; that south of the old Farrington claim, as above, there was a tract inside of the general inclosure of twenty to thirty acres, and that no part of the tract in controversy lies south or southerly of the said Farrington claim; that it lies directly east of it, and separate from-the part occupied by the Ludlum house by the said strip in possession of the Crowell party."

Thus, it appears that plaintiff has admitted the incorrectness of the evidence of his witness, Mason, in two vital particulars: First—Mason testified that the land in controversy "was the only land answering the description of the twenty acres lying southerly of and adjoining the Farrington claim." Plaintiff's admission is "that south of the old Farrington claim  *  *  *  there was a tract inside of the general inclosure of twenty or thirty acres." Second—Mason testifies that "the tract in controversy lies to the southeast of the Farrington claim;" but plaintiff admits " that no part of the tract in controversy lies south or southerly of said Farrington claim; that it lies directly east of it."

The first paragraph of the seventh finding of the Court is not supported by, but is manifestly against, the evidence. The evidence clearly shows that the lease of the 18th August, 1854, instead of being made by Mason, Bensley, and Himrod to Snow and others, of "the land claimed by them within the said inclosure," was made by Mason, Bensley, Himrod, Dumarthray, Farrington, and Webster, to Snow and others, of the old Farrington and Ludlum claim, and about twenty acres lying southerly of and adjoining the old Farrington and Ludlum claim. This lease did not cover the land in controversy, or any portion thereof. There could, therefore,

have been no possession, actual or constructive, on the part of plaintiff or his grantor, or their co-tenants, of any portion of the premises in controversy, by virtue of this lease, and the entry and occupancy of the lessees thereunder, as disclosed by the evidence.

It appears from the evidence that the witness, Frederick Mason, claims to be a cotenant with plaintiff in the demanded premises, and had possession of this lease at the former trial. He is interested with plaintiff in the recovery of the demanded premises from appellants; and the fact that this lease was not introduced on the former trial, and no evidence offered in relation thereto, is very suggestive of a knowledge on the part of plaintiff and Mason that the premises described therein did not embrace the land described in the complaint, or any part thereof. On the former trial, plaintiff relied upon his cotenant Mason's lease to Garagnon of the half acre in the northern part of the premises described in the complaint, and the actual possession taken by the lessee of the leased premises in 1861, as sufficient to establish in plaintiff a constructive possession of the entire premises described in the Crowell deed to Mason, Bensley, and Himrod. But this having failed on appeal to this Court, this lease of August, 1854, is, on the retrial, sought to perform a like service for plaintiff, not before considered within the range of its powers.

The second point now urged by appellants, that "the evidence fails to show that plaintiff and his cotenants Bensley and Mason, were ever in the actual possession of the Shelby tract or land in controversy," as found by the Court in its tenth finding, I think is well taken. There is no evidence tending to establish that plaintiff or his cotenants, or their grantors, ever occupied, cultivated, or improved one foot of the Shelby tract, the land in controversy. It cannot rationally be claimed that the plow furrow or small ditch made by Crowell in September, 1853, on the east and south lines of

the tract, constituted an actual possession of the tract by him, nor can it be reasonably claimed that the construction of a substantial fence only along the east line of the land in controversy by Mason, Bensley, and Himrod, in January, 1854, and keeping the same in repair till 1862, constituted an actual possession, or the subjection of the tract of land, or any portion thereof except that upon which the fence stood, to their will and dominion, to the exclusion of others. And as to the general inclosure, which included the land in controversy, and nearly two hundred acres of other lands not claimed exclusively by plaintiff, his grantor or their cotenants, and much of which, all the time this inclosure was maintained, was in the actual occupancy of various parties claiming and holding adversely to the Farrington and Bensley parties, it would be the extreme of assumption to maintain that this sufficed to subject the premises in controversy to the will and dominion of the then claimants of a portion thereof, to the exclusion of others, or to constitute an actual, exclusive possession of any claimant of a specific parcel within this general inclosure. ( *Wolfe* v. *Baldwin*, 19 Cal. 367, 368; *Borel* v. *Rollins*, 30 Cal. 408.)

I am clearly of opinion that the evidence entirely fails to establish either an actual or constructive possession in plaintiff or his grantors of that portion of the premises described in the complaint lying south of the road running east and west on or near the line of Mariposa street, and that the judgment and order denying appellants' motion for a new trial should be reversed and the cause remanded.

So ordered.

Mr. Justice CROCKETT being disqualified, and Mr. Justice WALLACE, did not participate in the foregoing decision.