[L. A. No. 1898. In Bank.—August 23, 1907.]

## NATHAN T. CORY, Respondent, v. SANTA YNEZ LAND AND IMPROVEMENT COMPANY, Appellant, and C. P. ROBINSON, Defendant.

MORTGAGE—POSSESSION BY MORTGAGEE—BAR OF RIGHT TO FORECLOSE—CONSENT TO POSSESSION.—If a mortgagor, either by his tacit or express consent, allows the mortgagee to enter into the possession of the mortgaged premises as additional security, the mortgagee thereby acquires the right to retain possession as long as the indebtedness secured by the mortgage remains unpaid,—a right additional to, and independent of, his right to foreclose, and which is not extinguished or affected by the fact that an action to foreclose may be barred by the statute of limitations.

ID.—ACQUIESCENCE BY MORTGAGOR TO POSSESSION.—The actions of the mortgagor in this case, and his acquiescence for upwards of ten years in the possession of the mortgagee, is sufficient evidence that such possession was in pursuance of an express agreement therefor.

ID.—MORTGAGEE'S RIGHT TO ESTABLISH TITLE BY PRESCRIPTION.—A mortgagee in possession, after his right to foreclose has become barred by the statute of limitations, has, and ought to have, some means of quieting his title to the mortgaged premises; and since he can no longer foreclose, he should be allowed to set in motion

the time which will bar the right of the mortgagor to redeem, by plainly manifesting his intention to claim the land as his own, so that at the end of five years, in default of redemption, he will be invested with a prescriptive title.

ID.—WRONGFUL POSSESSION BY MORTGAGOR—EVICTION BY MORTGAGEE—TRESPASS.—A mortgagor who is forcibly ejected from the mortgaged property by the mortgagee, who was rightly entitled to the possession, whatever his rights might be in an action of forcible entry, cannot maintain an action in trespass to recover damages of the mortgagee.

ID.—POSSESSION OF INCLOSED TRACT AFTER SALE OF PORTION.—Where an owner of a large tract of inclosed land conveyed a portion thereof within the tract, and put his vendee in possession, such acts did not put an end to the owner's possession of the residue; it only entitled the vendee to a right of way across the residue.

APPEAL from a judgment of the Superior Court of Santa Barbara County and from an order refusing a new trial. J. W. Taggart, Judge.

The facts are stated in the opinion of the court.

C. P. Robinson, and W. S. Day, for Appellant.

William G. Griffith, for Respondent.

BEATTY, C. J.—This is an action of trespass, in which the plaintiff recovered a judgment for $368.50 and costs. The corporation defendant appealed to the district court of appeal from the judgment and from an order denying a new trial. The justices of that court having been unable to agree as to the proper disposition of the appeal, the cause was transferred to this court for hearing and decision.

It appears from the pleadings and the uncontradicted evidence in the record that prior to the 28th of January, 1888, the appellant had subdivided a large tract of land in Santa Barbara County, and that on that date it conveyed to J. S. Shoemaker,—then a resident of Reno, Nevada,—a subdivision known as lot No. 13, containing forty acres. The agreed price of the lot was three thousand dollars, of which one thousand dollars were paid at the date of the conveyance. For the balance Shoemaker executed two promissory notes for one thousand dollars each, payable, respectively, January 20, 1900, and January 20, 1901, and secured by mortgage of the land.

Shoemaker leased the land to tenants, who occupied it until the year 1892. In the mean time he had paid no part of the principal or interest of the two purchase-money notes, and in May, 1893, they had been placed in the hands of defendant Robinson for foreclosure. He, as agent and attorney for the appellant, agreed with Shoemaker at that time to cancel the first note and to remit the accrued interest on both notes, amounting to four hundred and eighty dollars, upon the agreement of the latter to pay the second note in the course of eight or ten months. This agreement was ratified by the corporation and the first note canceled. Robinson testifies that it was at the same time agreed by Shoemaker that appellant should have and maintain possession of the mortgaged premises until the remaining note was paid. Shoemaker denies that he made any such agreement, but the undisputed fact is that the corporation, through its agents, took possession of the lot about that time, and for fully ten years kept the undisputed possession through tenants rendering rent to it. It is also an undisputed fact that the appellant permitted the second note to become barred by the statute of limitations on January 20, 1895, without any attempt to foreclose, and that afterwards, on February 27, 1895, Shoemaker gave a new mortgage to secure a new note for one thousand and fifty dollars, the amount of the second note and accrued interest. At the date of this new note and mortgage the appellant was in the peaceable and undisputed possession of the land. No part of the principal of this renewal note was ever paid, and only part of the interest. In August, 1899, the right to foreclose was barred. But the corporation had been in possession all the time by its tenants and in receipt of the rents, and as its mortgage interest exceeded the assessed value of the land, it paid all the taxes. Matters remained in this posture until 1901, when the appellant directed the assessor to omit any further mention of the mortgage, and to assess the land to it as a part of the larger tract of which it was a subdivision. In 1902 Shoemaker had the land assessed in his name, but down to the trial of this action in 1905 the appellant had paid all the taxes. In view of these facts it is difficult to believe that Shoemaker did not expressly agree, as testified by Robinson, that appellant should take and hold possession of the land, and it cannot be doubted that there

was at least a tacit agreement to that effect. If not, why did Shoemaker, for a period of ten years, acquiesce in such possession, actual, open, and unequivocal? Men in their senses do not allow their land to be unlawfully occupied by other persons for so long a period without some sort of protest, and it must be concluded on the evidence that in October, 1903, the appellant was a mortgagee in lawful possession of the mortgaged premises, unless, as seems to be contended, its direction to the assessor in 1901, to omit any mention of the mortgage in assessing the land to it, deprives it of that *status*. When the respondent, as agent of Shoemaker, went upon the land for the purpose of taking and holding possession,—October 20, 1903,—the larger tract—435 acres, of which lot 13 was a part—was completely inclosed by a fence sufficient to turn stock, and had been cultivated that season by tenants of the appellant. The crops, however, had been harvested, and it was being used only for the pasturage of stock. All the land within the large inclosure, except lot 13 and a similar subdivision which had been sold to a third party, belonged to appellant. Respondent under these circumstances entered the large inclosure with a camping outfit and a kit of carpenter's tools. He pitched his tent on lot 13, and proceeded to cut from trees growing on the premises posts for a fence. He had marked the corners of the lot, and was engaged in setting the fenceposts, when, about a week after his entry, he was notified by agents of the appellant that he was trespassing and warned to desist. He disregarded this and other warnings, and on the 10th of November was, by order of the appellant, forcibly removed from the land with all his belongings. These are the salient facts of the case, and its minor circumstances do not alter their complexion. The motion of appellant for a new trial was based upon the grounds that the verdict was not sustained by the evidence, and that the court had erred in its instructions to the jury. As to the principal question of law arising upon the facts above stated there is no controversy. It seems to be conceded that if a mortgagor places his mortgagee in possession of the mortgaged premises as additional security, the mortgagee thereby acquires the right to retain possession as long as the indebtedness so secured remains unpaid—a right additional to, and independent of, his right to foreclose, and which is not extinguished or affected by the

fact that an action to foreclose may be barred by the statute of limitations. (*Spect* v. *Spect*, 88 Cal. 440, [22 Am. St. Rep. 314, 26 Pac. 203]; *Zellerbach* v. *Allenberg*, 99 Cal. 69, [33 Pac. 786]; *Boyce* v. *Fisk*, 110 Cal. 113, [42 Pac. 473].)

We think it clear, as above stated, that appellant was in possession of the mortgaged premises by Shoemaker's tacit, if not by his express, agreement, and for the purpose of additional security. Indeed, we think the evidence of an express agreement to that effect is free from any substantial conflict. There are many cases in which actions speak louder than words, and here is presented a series of acts of the parties of a highly significant character, every one of which consists with the testimony of Robinson and conflicts with the testimony of Shoemaker. It was a most reasonable and moderate condition of remitting one third of the purchase price of the land and all accrued interest, and extending the time of payment of the other third, that the appellant should have the possession of the land as further security, and it was a condition which, while beneficial to the appellant, so far from imposing any hardship upon Shoemaker, entirely comported with his interest and convenience. The omission of appellant to foreclose not once only, but twice in succession, until the statute had barred that remedy, is strong evidence that its officers, including Robinson, considered that they had other sufficient security, and Shoemaker's acquiescence for a period of ten years in the possession of the appellant is to my mind conclusive that he knew it to be a rightful possession.

But it is contended that the appellant by causing the land to be assessed to it independent of the mortgage, thereby initiating an adverse claim which would ripen into a prescriptive title at the end of five years, forfeited its right of possession as mortgagee, and restored to Shoemaker the right to recover the possession without paying his debt. If this is true, it places a mortgagee in possession after the action to foreclose is barred in this position: While he can keep the land forever if he makes no other claim to it than that of mortgagee, he can never sell it, because he can never make an indefeasible title, and he can never put improvements on it which will make it profitable to the mortgagor to redeem. The land is out of the market for all time, and forever condemned to lie idle and unimproved. Such a result is opposed to public policy

and to the policy of express law. We think it much more reasonable to hold that the mortgagee in possession has, as he ought to have, some means of quieting his title to the mortgaged premises, and since he can no longer foreclose, that he should be allowed to set in motion the time which will bar the right of the mortgagor to redeem, by plainly manifesting his intention to claim the land as his own, so that at the end of five years, in default of redemption, he will be invested with a prescriptive title.

If this view is correct, the appellant was in the peaceable and rightful possession of lot 13 on the 20th of October, 1903, when respondent made his attempt to take possession. It is extremely doubtful whether the respondent ever had anything more than a mere scrambling possession of any part of the premises. He had gone inside of appellant's inclosure upon land every foot of which, except forty acres belonging to a third party, was in the exclusive possession of the appellant, and was attempting to inclose the forty acres composing lot 13. He had pitched a tent, marked the corners of the lot, and set some posts on one side, when on the 10th of November he was dispossessed. By these wrongful acts he had gained at most a right to recover in an action of forcible entry. He was himself a trespasser, and by virtue of his twenty days' occupancy had gained no right except that which was secured by a statute whose principal object is to prevent breaches of the peace by punishing the aggressor. He could perhaps have recovered in forcible entry, but he cannot recover damages in trespass against the party rightfully entitled to the possession. (*Burnham* v. *Stone,* 101 Cal. 164, 172, [35 Pac. 627].)

It is unnecessary to consider the objection (not raised by respondent, but suggested in one of the opinions transmitted from the district court of appeal) that the errors specified in the instructions of the court cannot be considered because it is not made to appear that they were excepted to before the jury retired. I think it does sufficiently appear that exceptions were taken in time, but assuming they were not, the instructions appear in the record and serve to explain the erroneous verdict of the jury. They imply that the complete inclosure of the larger tract of which lot 13 was a portion was not evidence of possession of that lot by appellant if there was other land (referring to the forty-acre lot belonging to a

third party above mentioned) within the inclosure which appellant did not claim. This instruction probably accounts for the disregard by the jury of the overwhelming evidence of appellant's rightful possession at the date of respondent's wrongful entry. The facts of this case are widely at variance with those of *Walsh* v. *Hill,* 41 Cal. 571, upon which the instruction referred to seems to be based. The appellant having a large tract of land inclosed, conveyed forty acres within the tract and put its vendee in possession. This did not put an end to appellant's possession of the residue; it only entitled the vendee to a right of way across the residue. There should have been a new trial granted on the evidence.

The judgment and order of the superior court are reversed.

McFarland, J., Henshaw, J., and Lorigan, J., concurred.

SHAW, J., concurring.—I concur in the judgment and in all of the opinion of the chief justice, with two exceptions.

The opinion appears to suggest that there was no substantial conflict in the evidence in regard to the fact of there having been an agreement between Shoemaker and Robinson, as agent of the Santa Ynez Land and Improvement Company, to the effect that that company should, as mortgagee, take and retain possession of the mortgaged land until the mortgage debt was paid, and in regard to there having been any express consent thereto by Mr. Shoemaker. I think there is a substantial conflict on this subject, but Mr. Shoemaker does not dispute the fact that the company was in the exclusive, actual, and peaceful possession of the land continuously, with his knowledge, receiving to its own use the rents and profits thereof, from 1893 to 1903, nor the fact that during that period he made no objection thereto and demanded no accounting,—that, in short, he acquiesced in its possession as mortgagee. This being the case, the question whether or not there was an express agreement or a formal consent is immaterial. The company must be deemed to be lawfully in possession as mortgagee by implied agreement and by tacit consent. The fact of such implied agreement arises from the circumstances stated, and neither the circumstances nor the implied agreement arising therefrom is denied. The case comes within the rule laid down in *Burns* v. *Hiatt,* 149 Cal. 623, [117 Am. St. Rep. 157, 87

Pac. 196], and the company, having lawfully acquired possession, has the same rights as mortgagee in possession as if its possession was under the sanction of an express agreement.

In the statement in the opinion suggesting that the record sufficiently shows the taking of an exception to the instructions, I understand the chief justice to be stating his personal opinion and not that of the court.

Sloss, J., and Angellotti, J., concurred.