**AMERICAN TRUST CO. v. ENGLAND et al.**
**No. 7711.**

Circuit Court of Appeals, Ninth Circuit.
June 8, 1936.

Brobeck, Phleger & Harrison, of San Francisco, Cal., for appellant.

Fred S. Herrington, of San Francisco, Cal., for appellee England.

Dinkelspiel & Dinkelspiel, of San Francisco, Cal., for appellee Coast Holding Co.

Before WILBUR, DENMAN, and MATHEWS, Circuit Judges.

DENMAN, Circuit Judge.

This is an appeal from the order made by T. J. Sheridan, referee in bankruptcy, and confirmed by the District Court, directing Frank T. Andrews, trustee in bankruptcy of Alexandria Hotel Realty Corporation, a corporation, bankrupt, to pay to J. O. England, as trustee in bankruptcy of Northern Counties Land & Cattle Company, a corporation, certain funds aggregating $4,359.03, constituting the net proceeds held by Andrews as such trustee, as a result of his operation as mortgagee in possession of a cattle range known as "Diamond Range" owned by the cattle company. The question presented is a determination of the rights of the respective parties to this fund.

At all times here involved the cattle company was the owner of the Diamond Range, located in Tehama county, Cal. The American Trust Company is the trustee under a trust deed securing a bond issue constituting a first encumbrance on the Diamond Range. The second mortgage is not concerned in the present proceeding. The Alexandria Corporation was the holder of a third mortgage on the Diamond Range; this third mortgage being in the form of a deed absolute. Prior to any proceedings hereinafter mentioned, the Alexandria Corporation was adjudged bankrupt, and Andrews became the trustee.

Andrews as trustee entered upon the Diamond Range on September 17, 1932, and thereafter operated the property under circumstances later related. On October 13, 1932, appellant, American Trust Company, trustee under the trust deed creating the first mortgage, filed with the referee in the Alexandria bankruptcy proceedings a petition for an order authorizing the sale of the Diamond Range and also a petition for an order sequestering the proceeds of its operation by Andrews. The petition for sale was denied without prejudice to its renewal after not less than 60 days. On January 26, 1933, the referee made an order (1) granting the petition for order of sequestration and (2) directing Andrews' to apply the proceeds (a) to the payment of ordinary and necessary expenses of maintenance, care, and preservation of the property; (b) to the payment of taxes accrued and unpaid thereon when and as sufficient funds should accumulate to permit the payment of said taxes or any part thereof; and (c) to pay any remaining balance thereof to American Trust Company as trustee under the first mortgage or to deposit the same in a separate fund or account to be disbursed only upon order of the referee. Pursuant to the order, Andrews segregated the funds, but has done nothing with regard to their payment, and they are still in his hands.

The cattle company, mortgagor and owner of the fee of the Diamond Range, was not made a party to nor joined in any manner in the sale or sequestration proceeding at the time of the order of sequestration.

On July 26, 1933, the referee made an order granting a supplemental petition of the American Trust Company for authority to sell and directed Andrews, trustee, to surrender possession of the property to the American Trust Company. Pursuant to this order Andrews surrendered possession on August 12, 1933. The cattle company was not made a party to nor joined in this last-mentioned proceeding. All of the moneys in dispute here were collected by Andrews between October 13, 1932, when appellant petitioned for the sequestration, and August 12, 1933, when appellant took actual possession.

Prior to October 13, 1932, Andrews had received $658.66 of the net proceeds of the operation. Appellant disclaims any interest in this prior collection.

On July 28, 1933, the cattle company served upon Andrews its claim to the funds in his possession, and demanded that Andrews deliver to it the sequestered net proceeds. On September 14, 1933, the American Trust Company filed with the referee in the Alexandria bankruptcy proceeding its petition for release of impounded funds. Andrews, as such trustee, filed his answer in which was set forth the claim made upon him on July 28, 1933, by the cattle company claiming the said funds, and praying for an order requiring the cattle company to propound any claim or interest which it might have or assert against the said funds.

The cattle company appeared in the proceeding and filed its claim to the funds. Appellee, Coast Holding Company, a corporation, creditor of the cattle company, filed its answer to the order to show cause, issued upon the answer of Andrews, praying that the funds be paid to the cattle company, or to its trustee in bankruptcy on his election and qualification. An involuntary petition in bankruptcy had been filed against the cattle company on October 25, 1933. On February 14, 1934, J. O. England became the trustee in bankruptcy of the cattle company. England, as trustee, was substituted for the cattle company.

All of the parties stipulated that they would be bound by the decision of the District Court, provided, however, that nothing contained in the stipulation should preclude any party from appealing from any order or decision of the court. The purpose of this stipulation was to avoid a multiplicity of suits and to make a decision of the issues presented binding upon the parties. Pursuant to this stipulation the order of the District Court affirmed the order of the referee.

The controverted finding of fact by the referee, upon which his order was based,

is as follows: "VII. That said Frank T. Andrews, as such Trustee, at all times subsequent to the said 17th day of September, 1932, did so take and continue in possession of said 'Diamond Range' without the consent of said Northern Counties Land and Cattle Company, a corporation."

Appellant contends that since the uncontradicted evidence is that Andrews, as trustee of the bankrupt estate of the third mortgagee, entered into peaceable possession of the Diamond Range on the 17th day of September, 1932, and continued therein, that he was entitled to the proceeds of the lease payments and other income from the possessed mortgaged property, and that it is a matter of indifference whether he had obtained the consent of the cattle company, mortgagor. Appellant cites as its authority for this right of the mortgagee, peaceably in possession of the mortgaged premises, the case of Burns v. Hiatt, 149 Cal. 617, 87 P. 196, 117 Am.St.Rep. 157. That case squarely decides that, where a mortgagee acquires his possession first under a void foreclosure decree and continues therein after the decree has been held void, he is a mortgagee in possession who cannot be disturbed unless the mortgage be paid. After an elaborate review of the authorities, the Supreme Court of California holds: "Under the rule as declared in these cases, it is immaterial whether possession is taken with or without the consent, express or implied, of the mortgagor. * * * While decisions may be found upholding a contrary doctrine, we are of the opinion that the rule enunciated by the authorities cited is in full accord with equitable principles." Burns v. Hiatt, supra, 149 Cal. 617, 625, 87 P. 196, 199, 117 Am.St.Rep. 157.

This determination by the California Supreme Court of the right of the mortgagee in possession without consent, express or implied, of the mortgagor to retain possession until the mortgage be paid has never been expressly overruled by any decision of the state.

The cattle company points out that the decision was given without consideration in the opinion of section 2927 of the California Civil Code, or section 744 of its Code of Civil Procedure, as follows:

"Section 2927. *Mortgage does not entitle mortgagee to possession.* A mortgage does not entitle the mortgagee to the possession of the property, unless authorized by the express terms of the mortgage; but after the execution of the mortgage the mortgagor may *agree* to such change of possession without a new consideration." (Italics supplied).

"Section 744. *A mortgage must not be deemed a conveyance, whatever its terms.* A mortgage of real property shall not be deemed a conveyance, whatever its terms, so as to enable the owner of the mortgage to recover possession of the real property without a foreclosure and sale."

The cattle company, mortgagor, admits the force of the precedent of Burns v. Hiatt, supra, as justifying the possession of the trustee Andrews if it is still the law. It claims, however, of these Code sections, "that the court overruled them entirely in deciding that case contrary to the express provisions of the said code sections which, as we have shown, clearly make necessary the mortgagor's consent to any *rightful* taking of possession by the mortgagee." It claims that Burns v. Hiatt is in effect overruled by the decision of the California Supreme Court in Snyder v. Western Loan & Building Co., 1 Cal.(2d) 697, at pages 701, 702, 37 P.(2d) 86, 88, where that court said: "The right to possession does not pass to the trustee or the beneficiary under a trust deed in the absence of a special agreement. Meadows v. Snyder, 209 Cal. 270, 286 P. 1012; 25 Cal. Jur. 41, 42; 41 Cor.Jur. 609, § 575. We must apply, therefore, the same rules as to the rights of the trustee or the beneficiary to possession of the premises *as are applicable by statute in the case of a mortgagee, whose rights to possession, whether before or after default, are controlled by the agreement, or the consent otherwise of the mortgagor, express or implied.* Civ.Code, § 2927; Meadows v. Snyder, 209 Cal. 270, 286 P. 1012; Cameron v. Ah Quong, 175 Cal. 377, 165 P. 961; Dutton v. Warschauer, 21 Cal. 609 [82 Am.Dec. 765]; 17 Cal.Jur. 1020–1022; 1 Jones on Mortgages (8th Ed.) § 22. Where a mortgagee, and likewise a trustee or beneficiary under a trust deed, wrongfully ousts the one entitled to possession, he is liable as a disseisor. 19 R.C.L. 316; Meadows v. Snyder, supra." (Italics supplied.)

The Snyder Case, however, was not a case in which the mortgagee was in possession without the consent of the mortgagor. On the contrary, the court based its decision on the finding that by the terms of the trust deed the consent of the trustor had been given.

However, the dictum, based upon Civil Code, § 2927, which was not mentioned in Burns v. Hiatt, supra, does construe it against the contention of the appellant. It squarely states that the statute is applicable and that the rights of the mortgagee to possession "whether before or after default, are controlled by the agreement, or the *consent otherwise* of the mortgagor, express or *implied.*"

It is unnecessary, however, for us to resolve this question of the California law, because the uncontradicted facts show an implied consent of the mortgagor within the cases cited as the basis of the dictum in the Snyder Case. The evidence here shows that the trustee Andrews, shortly after entering into possession of the mortgaged premises, advised President Crittenden of the cattle company: " * * * That he was going up to the 'Diamond Range' to see if he could raise some revenue thereon from leasing the land there to different cattle owners, *and that said Mr. Crittenden told him that he thought that was a* very good idea and referred him to several people in Red Bluff whom he could see with respect to leasing the land. * * *" (Italics supplied.)

Entirely apart from the question whether the president of the cattle company was authorized to make the express consent contained in the above testimony, the president was the proper person through which to put the company on notice that the mortgagee had entered into possession of the property. From that time on the activities of the mortgagee in making the premises productive were with the full knowledge of the mortgagor. Further significant testimony is that the entire stock of the mortgagor cattle company was held under a trust instrument by the Pacific National Bank, trustee. This trustee had knowledge of the mortgagee's possession of the land and its representative told Andrews that his possession was illegal. Andrews replied that he did not know that to be a fact, and the representative told him that he *would* undoubtedly *hear* from the Pacific National Bank later. Thereafter, the Pacific National Bank, through its control of the stock, substituted its officers as the officers of the cattle company. The cattle company produced no evidence that either it or the Pacific National Bank ever disapproved Andrews' action in taking possession of the Diamond Range, and it was affirmatively shown that no formal action was taken by its board of directors approving or disapproving Andrews' possession of the mortgaged premises.

All of the moneys collected by Andrews as proceeds from the operation of the Diamond Range which are here in controversy were collected during ten months' open possession by Andrews of the theretofore idle and unoccupied property, with full knowledge of the mortgagor. The neglecting mortgagor now seeks to take from the industrious mortgagee the proceeds of the latter's efforts to reduce the mortgagor's debts on his mortgages.

This situation, that is, possession of the land openly and in active management of the estate in collecting the income it produced, was the condition not only in the Hiatt Case, but in the case of Cameron v. Ah Quong, 175 Cal. 377, 384, 165 P. 961, 964, relied upon in the dictum in the Snyder Case, where the California Supreme Court held that the mortgagee was entitled to possession and the rights flowing therefrom. In the Hiatt Case, supra, the court found as follows (149 Cal. 617, 625, 87 P. 196, 199, 117 Am.St. Rep. 157): "The justice of such a rule is shown by the facts of this case, where the possession peaceably and in good faith acquired under color of the foreclosure proceedings *has been peaceably and in good faith maintained thereunder for nearly five years,* and, the debt being barred, now constitutes the only real security for the debt for which the mortgage was given." (Italics supplied.)

In Cameron v. Ah Quong, supra, the court, in holding the mortgagee properly held possession of the mortgaged premises, says (384): "He took the land as *owner and holder of the two mortgages,* which, together with the assignment were of record, and *personally. or by tenants he held the land openly* until the commencement of this action in 1903. Consent of the mortgagor may be shown by circumstances as well as by direct evidence of formal and declared acquiescence, and it was fully proven here. If a mortgagee obtain possession in any peaceful mode, he may retain it against the mortgagor or the latter's assignee until the mortgage debt is paid. Cooke v. Cooper, 18 Or. 142, 22 P. 945, 7 L.R.A. 273, 17 Am.St.Rep. 709." (Italics supplied.)

Apart from these facts shown, in any case, where there is a breach of the mortgage conditions, the possession of the mortgagee is presumed lawful and the mortgagor must show affirmatively it is not.

Hooper v. Young, 140 Cal. 274, 74 P. 140, 142, 98 Am.St.Rep. 56; Cory v. Santa Ynez Land & Imp. Co., 151 Cal. 778, 91 P. 647, 648.

■ We therefore hold, regarding the moneys collected by Andrews, that he is entitled to hold and did hold them as mortgagee in possession, and that the trustee for the mortgagor cattle company is not entitled to receive them for the benefit of the unsecured creditors.

■ The cattle company's trustee next asserts that the appellant trust company is not entitled to have paid to it the funds in the hands of the trustee of the third mortgage because (a) under appellant's trust instrument creating the mortgage it would not be entitled to enter into possession; (b) that its demand for sequestration is not equivalent to its own possession; and (c) the sequestration is void as to the cattle company, mortgagor, because it was not a party to the proceeding in which the order of sequestration was made.

Appellant's first mortgage created by the trust instrument on the Diamond Range clearly provides for the right of possession of appellant trustee on default of the payment of the installments of principal and interest on the note, secured by the mortgage. The defaults occurred. Section 1 of article V of that instrument provides: " * * * In case any of the foregoing Events of Default shall happen, the Trustee by its agents or attorneys, may forthwith enter upon, into or on any part of the property hereby mortgaged, and take possession thereof, and may exclude the Company, its agents and servants, wholly therefrom; and such Trustee in such case shall have the right to manage the mortgaged property and farm the same and cultivate the said mortgaged land and harvest and sell the crops thereon, and to carry on the business and exercise all the rights, franchises and powers of said Company, either in the name of said Company, or otherwise, as such Trustee may deem best; and such Trustee shall be entitled to collect and receive all crops, rents, incomes, issues and profits of the mortgaged property, and every part thereof. * * *"

The net proceeds of such operation of the business are to be applied to the payment of the secured obligation. The trust instrument further provides, section 4, article V, that in the event of default, " * * * the Trustee may forthwith proceed to protect and enforce its rights, and the rights of the bondholders under this Indenture, by suit or suits in equity or at law * * * in aid of the execution of any power hereby granted, * * * or for the enforcement of any other legal or equitable remedy as the Trustee may deem most effectual in support of any right or duties hereunder."

Acting under the above powers and rights of the trust instrument, the appellant trustee appeared in the bankruptcy proceedings of the Alexandria Company, the third mortgagee, in possession of the property under both mortgages, and procured from the referee the order for the sequestration.

The demand of the appellant upon the trustee for the sequestration of rents, and the referee's order for the sequestration, is the equivalent of the taking of possession by the appellant under its trust instrument. Mortgage Loan Co. v. Livingston (C.C.A.-8) 45 F.(2d) 28. In that case the mortgagees were entitled to possession under the provisions of the mortgage, but the possession was in the hands of a receiver in bankruptcy proceedings. The mortgagees requested the receiver to sequester the income from the mortgaged property from other income of the receivership. The receiver stated that he would so sequester this income. Afterwards, as here, the mortgagees filed a petition for leave to foreclose the mortgage. This was at first denied without prejudice. Thereafter, as in the present case, it was granted. In holding that the mortgagees were entitled to this income remaining in the hands of the receiver, the court said:

"In effect the mortgagees made themselves parties to the bankruptcy proceedings, recognized the receivership, but never acquiesced in an appropriation by him of the rents and issues of the property to the use and benefit of the general creditors, but promptly and persistently insisted that these rents and issues be impounded by the receiver, and either be used in the discharge of the taxes and insurance or be turned over to them. While it is true these mortgagees acquiesced in the collection of these rents and profits by the receiver, they did so on the understanding that they were impounded and would be properly applied or accounted for, and it cannot be said that they ever acquiesced in an appropriation of them by the receiver on behalf of the general creditors. They were, of course, unable to take possession of the property from the receiver, except on an order of court, and the record in this

case warrants the conclusion that the receiver was acting not only on behalf of the general creditors, in so far as this property was concerned, but was acting also in behalf of these mortgagees, and he collected and impounded these pledged rents and issues, keeping them separate from his other accounts for apparently no other purpose than to make them available as a part of the security under this second mortgage. * * * We are of the view that the mortgagees in effect intervened in the receivership proceedings in aid of their proceedings to foreclose, and this intervention operated to charge all of the net income arising from the operation of the property by the receiver with the lien of their mortgage. * * *

"To hold that the mortgagees had a legal right to these rents and issues under the provisions of their mortgage, but that they should be precluded from recovering same because they had not technically pursued a legal remedy is to overlook the fact that the property was in the control of a court of equity, and that equitable remedies commensurate with the legal rights of the parties should be available. To take from the mortgagees the property to which confessedly they are entitled under the pledge provision of their mortgage, and transfer it to the unsecured creditors of the bankrupt, appeals to us as harsh, inequitable, and unwarranted." Mortgage Loan Co. v. Livingston, supra (C.C.A.) 45 F.(2d) 28, 32, 33, 34.

This court in Re Hotel St. James Co., 65 F.(2d) 82, 84, cites the case of Mortgage Loan Co. v. Livingston, supra, with approval, but affirmed an order declining to pay over the money to a mortgagee under an instrument like that of appellant; it appearing that "No petition was addressed to the bankruptcy court to direct the general receiver, or the trustee, to sequester the rents and profits, as in Mortgage Loan Co. v. Livingston, supra; no claim to the rents was made until after the sale."

Since the demand and sequestration in response thereto is equivalent to the taking of possession by the appellant under its trust instrument, and since the trust instrument does not require that taking possession thereunder shall be with notice to the mortgagor, the mortgagor cannot here complain that it was not made a party to the proceedings leading to the sequestration.

This is a proceeding in equity, and we find funds in the possession of the trustee in bankruptcy to which the appellant made proper claim and is in a position equivalent to his possession of the property as mortgagee in possession. Before distribution of the funds, the mortgagor became a party to the bankruptcy proceedings in which the funds are so held. It has had full opportunity as such party to protect its rights. The issue as to the right to the funds should be determined by this court sitting in equity. We hold that the trustee Andrews should pay over to the appellant the net proceeds of the operation of the Diamond Range during the period between October 13, 1932, the date of the filing of appellant's petition for sequestration of the funds, and August 12, 1933, the date of the delivery of the possession of the Range to appellant in appellant's foreclosure proceeding, amounting to $3,700.37, and the $658.66 should be retained by the trustee, Frank T. Andrews, for distribution as a part of the bankrupt estate of the Alexandria Hotel Realty Corporation, a corporation bankrupt.

Reversed.