[S. F. No. 15735. In Bank.—July 28, 1938.]

TITLE GUARANTEE AND TRUST COMPANY (a Corporation), Respondent, v. CHARLES E. MONSON et al., Appellants.

Sven H. Svenson for Appellants.

Lillick, Olson, Levy & Geary and Hansen & Sweeney for Respondent.

HOUSER, J.—As a foundation for the instant action, the record herein discloses the existence of the following pertinent facts, to wit:

On the 6th day of September, 1928, Joseph P. Stein and his wife Annie, executed 140 promissory notes in favor of American Mortgage Company, which notes aggregated the sum of $145,000. To secure the payment of said notes, the makers thereof executed their deed of trust on certain real property in favor of the plaintiff Title Guarantee and Trust Company. Thereafter the said Steins conveyed their interest in said property to the defendants Monson. On June 6, 1932, certain interest that was then due on the indebtedness had not been paid. By the terms of said deed of trust, on the happening of said default, plaintiff was authorized to enter upon and take possession of the trust estate and to collect the rents, issues and profits thereof. On the 29th day of July, 1932, in writing the plaintiff demanded of the defendants that they deliver possession of said estate to the plaintiff. Thereupon, the defendants neglected and refused to accede to such demand. On the 10th day of August, next ensuing, the plaintiff commenced an action against the defendants to "specifically enforce" the terms of said deed of trust; and on the 17th day of November of the said year it obtained a judgment to the effect that since the 29th day of July, 1932, it was entitled to the possession of the above-mentioned property, and that the defendants forthwith deliver such possession to the plaintiff. Notwithstanding the terms of said judgment the defendants, both personally and constructively (through their grantees) continued in possession of the said property until February 28, 1933. Furthermore, it appears that in such *interim*, the defendants and their grantees had collected rents, issues and profits appertaining to said property, which they withheld and still withhold from the plaintiff. After the plaintiff had been let into possession of the said property, it commenced the instant action to recover from the defendants

damages in the amount of said rentals. From an ensuing judgment that was rendered in favor of the plaintiff the defendants have appealed to this court.

In substance, it is contended by defendants that the complaint failed to state a cause of action against them because it contained no allegation to the effect that plaintiff's primary security had been exhausted or that a sale of the apartment house building under the terms of the deed of trust had resulted in leaving unpaid a part of the indebtedness secured by said deed of trust; and that the property itself might have been ample to discharge the debt without recourse to the rents, issues, and profits from said property. It seems clear that in order for such contention to be tenable, the express stipulation in the deed giving to plaintiff the right to collect the rentals upon default would have to be ignored. Obviously, upon default, plaintiff's right to the rentals was not dependent upon any statutory right such as is contemplated by the provisions of section 564, Code of Civil Procedure, under which section, in an application for the appointment of a receiver, a mortgagee is required to show that the mortgaged premises "is probably insufficient to discharge the mortgage debt"—with the consequence that a resort to the rents and profits is necessary. (18 Cal. Jur. 300, 301.) But the right asserted here is dependent solely upon the express agreement of the trustors that upon default, recourse may be had to such rentals by the beneficiary. (*American Trust Co.* v. *England,* 84 Fed. (2d) 352.) Furthermore, it would appear that this contention is necessarily postulated upon the proposition that notwithstanding the provision in the deed of trust conferring the right here sought to be enforced by plaintiff, upon default, it became the duty of the latter to exhaust its primary security, necessarily by foreclosure action, or other appropriate proceeding (even though the debt were not matured), and in the event of a deficiency arising thereupon, to have taken action, then and not prior thereto, to have the rentals subjected to the payment of the said deficiency. In that regard, it may be said that it does not appear that either by statutory provision or by the terms of the deed of trust, was the plaintiff obligated to foreclose its lien prior to maturity of the debt. With reference to the general situation, in 17 California Jurisprudence, pages 1018, 1019, it is pointed out that "possession is entirely distinct from the contract of hypothecation";

and that "possession of the land is a specific security for the debt, distinct and separate from the mortgage, which has been conferred by the act of the debtor". And in the case of *Spect* v. *Spect*, 88 Cal. 437 [26 Pac. 203, 22 Am. St. Rep. 314, 13 L. R. A. 137], it also was said, "This right [in a mortgagee] to retain possession of the land is not coincident with a right to foreclose his mortgage, or dependent upon such right, but depends solely upon the existence of the debt". Furthermore, in the case of *Cory* v. *Santa Ynez Land & Imp. Co.*, 151 Cal. 778 [91 Pac. 647], it also was said that, where a mortgagor allows the mortgagee possession of the mortgaged property "as additional security, the mortgagee thereby acquires the right to retain possession as long as the indebtedness so secured remains unpaid,—a right additional to, and independent of, his right to foreclose . . . ".

Appellants urge the additional point that since they were not one of the original parties to the notes and deed of trust, nor were in personal possession of the premises during a considerable portion of the time that elapsed after demand therefor was made and before judgment was obtained—they should not be held liable for such rents. With respect to the latter situation, it appears that, although the action was commenced on August 10, 1932, on September 20th, following, the defendants sold their interest in the property, and thereafter were neither in personal possession thereof, nor after that date did they receive any of the rents that accrued and were paid therefor. However, in that connection, it also should be noted that, although the defendants sold their interest, at no time did they notify the plaintiff of that fact, nor did the plaintiff acquire either notice or knowledge thereof until after the judgment had been rendered against the defendants. But considering the fact that the defendants had knowledge of the asserted rights of the plaintiff, including that of the incidental right of possession of the property on the failure of the defendants to pay the installment interest, as well as of the right of the plaintiff to collect and to retain to its own use the rents as they thereafter might accrue, it would be most inequitable to permit the defendants by the means of effecting a conveyance of their interest in the property, to escape the consequences of the provisions of the deed of trust with respect to their liability. The deed by which title of the defendants was passed to some third person had the effect of enabling that person to collect the rents and thus

do the very thing that created the alleged liability in favor of the plaintiff. If by sale of the incumbered property, the incumbrancer were permitted to escape his just liability with respect to his covenants, nothing would prevent his grantee from granting to some other person, and so on, *ad infinitum*, to the irreparable damage of the beneficiary of the trust. It becomes apparent that the contention of the appellants in this regard, likewise, cannot be upheld. ■ Within, and as a part of the deed of trust, the parties thereto had the right to insert any lawful conditions as a part of the consideration for the creation of the debt for which the property was hypothecated, and therein, upon default in payment, to invest in the plaintiff not only the right of possession, but also the right to the rentals. (*Snyder* v. *Western Loan & Building Co.*, 1 Cal. (2d) 697, 702 [37 Pac. (2d) 86].) And this covenant was equally binding upon a subsequent grantee of the land. To hold that, to the loss of the creditor, the covenants agreed upon between the debtor and the creditor thereafter could be repudiated by a subsequent grantee, as in effect is contended here, would be contrary to reason and fairness. The rights of the defendants were measured by the conditions and terms of the original trust deed. In volume 41 C. J., p. 714, it is said: ''The purchaser of mortgaged premises will be entitled, as against the mortgagee, to recover or retain the possession only in case his vendor would have been so entitled· . . . The purchaser is ordinarily entitled to all rents of the property accruing after the date of his purchase, unless they are expressly pledged in the mortgage as part of the security.'' Again, in the case entitled *Equitable Life Assur. Soc.* v. *McCartney*, 20 Fed. Supp. 37, the court says, ''The rights of the grantee of the mortgagor are no greater than that of her grantor, for she takes the property subject to the right to enforce the lien upon the rents.'' It may not be doubted that the plaintiff here would have been entitled to collect the rentals from the trustors from the date of demand had the latter been in possession instead of their grantees; and just so should the plaintiff be entitled to recover from these defendants the rentals wrongfully collected by them and their assignees during a period of time when, in contravention of the terms of a judgment theretofore rendered against them, the defendants wrongfully withheld the possession and rentals from the plaintiff, and thereafter effected a conveyance of the property and transfer of possession to persons other than the plaintiff, with full

knowledge of the right in the latter thereto, and without notification to it of such change in ownership and possession; and where the circumstances show that in fact plaintiff did not become aware of such change of ownership and possession until after judgment had been rendered in the premises. Furthermore, in the first instance, by virtue of the original contract between the trustors and the beneficiary, it may be said that the land itself became primarily liable for the payment of the debt. In the case of *Occidental Life Ins. Co.* v. *McCracken*, 19 Cal. App. (2d) 239, 240 [65 Pac. (2d) 130], it was said, " . . . where a vendee takes land subject to a mortgage, the land becomes, so far as the mortgagor is concerned, as between him, the creditor, and the vendee, primarily liable for the payment of the debt, . . . " (See, also, *Braun* v. *Crew*, 183 Cal. 728 [192 Pac. 531].) And in 41 C. J., p. 716, it was also said, "A conveyance of land subject to a certain mortgage subjects the land to the payment of interest which has accrued in accordance with the terms of the mortgage, . . . " In the case entitled *Owsley* v. *Neeves*, 179 Ill. App. 61, 63, appellant was deeded the premises "subject to whatever lien appellees secured thereon by virtue of the trust deed"; and the court there said: "Appellant cannot get away from the fact that his rights in the premises are subject to whatever lien was created in favor of appellees by their trust deed. Rents and profits are the subject of mortgage. A mortgagee has a specific lien upon rents and profits of mortgaged land when they are expressly pledged by the mortgage as part of his security . . . Appellant, as subsequent purchaser, was bound by those terms of the trust deed, . . . " And in the case of *Townsend* v. *Wilson*, 155 Ill. App. 303, 308, it appeared that the purchasers of the premises there involved took the land "subject to" a mortgage conferring the right to the rentals therefrom upon the mortgagee or his agent, at the time of foreclosure. In referring to the purchasers, the court said, "But their implied agreement . . . by accepting the deed with that proviso that it was subject to the mortgage, was that the land and the rents and profits mortgaged . . . should stand good for that debt and be charged with that debt as against any right they received by virtue of the deed. Their action in this case in claiming these rents simply amounts to a breach of their contract and they have no standing in law or equity in their claim to the rents." ▮ It follows that the right to the rentals which plaintiff is asserting

here could not be defeated by a subsequent change in possession by virtue of a conveyance of the land.

From that which hereinbefore has been indicated, it should be apparent that in the circumstances the trial court committed no error in admitting in evidence certain testimony of which the appellants complain regarding the amount of rent that was collected by the defendants or by their grantees. But it is equally clear that whatever proper expenses (such as taxes, insurance and the like) were incurred and actually paid by either of the defendants or by their grantees during the *interim* of the respective dates when demand was made by the plaintiff upon the defendants for possession of the property, and that upon which possession was actually surrendered to the plaintiff by the grantees of the defendants, should be deducted from the total amount of the rents that accrued and were collected by the defendants or by their grantees. And in that regard the appellants have no just right to complain, because it clearly appears that in computing the damages for which the plaintiff was entitled to recover judgment, account of the rents was taken to December 20th, only, when in fact it should have included the additional rents that were collected by the defendants or their grantees between that date and February 28th, next ensuing. In addition thereto, the sum of all proper operating expenses was deducted from the total of all the rents that were collected.

For the reason, as alleged by the defendants, that both preceding and during the trial of the action the attorneys who represented them made certain damaging admissions of asserted facts, which the appellants assert were not only untrue, but also that as concerning such admissions the said attorneys were unauthorized to make—the appellants contend that a new trial of the action should be granted. At the outset, it should be noted that the substance of that situation was pleaded by the defendants as an answer to the complaint; but that as to the underlying and foundational facts thereof, the trial court made findings of facts which were directly contrary to each of the contentions of the defendants in that regard. However, although from an examination of the record herein, it may appear that some of such findings were not entirely supported by the evidence, on consideration of the entire record, it is clear that even though it should be adjudged that the attorneys for the defendants were neither specifically nor impliedly empowered to make the

representations to which the defendants have referred, nevertheless, relying upon the same source of information, it is obvious that as a legal conclusion from the situation then existent, the several so-called unauthorized admissions that were made by such attorneys were either patently true or were such that, the entire evidence considered, no inference with reference to such facts other than that of which appellants complain, could have been reached. It therefore becomes apparent that, in the abstract, even conceding that the point that has been urged by the appellants is not entirely lacking in merit, nevertheless it is not available to them as affording a sufficient reason for an order by which the judgment might be reversed.

But the principal point upon which the appellants rely for a reversal of the judgment depends upon the application of the equitable principle of estoppel by former judgment, or by that which is known as the doctrine of "*res judicata*". In that regard the facts appear to be as follows: In the action that was brought by the plaintiff against the defendants for the possession of the property and which was asserted by the plaintiff to be an action "in specific performance", no claim for damages of any sort was made by the plaintiff, and particularly were no damages demanded on account of any rents that either theretofore had been, or which thereafter might be collected by the defendants. By the judgment in that action, among other things it was ordered "that the covenant (as set forth in the deed of trust), that possession of the property . . . shall be delivered to the plaintiff . . . be specifically enforced . . . " But other than for costs of the action, the judgment awarded no damages to the plaintiff. As hereinbefore has been indicated, in the instant action, the only claim that was asserted by the plaintiff against the defendants was for damages on account of such rents as had been collected by the defendants and their assignees during the time that they were wrongfully in possession of the property. With respect to the institution of the former action between the same parties, in part, it was alleged in the complaint:

"That on or about the 10th day of August, 1932, an action No. 244,861 was brought in the Superior Court of the State of California in and for the County of Los Angeles by the plaintiff herein as plaintiff and against . . . the defendants herein as defendants, in which it was prayed that the cove-

nant, that possession of aforesaid trust estate be delivered to the plaintiff herein contained in said deed of trust be specifically enforced and that the defendants herein be ordered to deliver possession of said trust estate to the plaintiffs herein in order that the plaintiff may carry out all of the covenants contained in said deed of trust.

"That thereafter, towit, on or about the 17th day of November, 1932, a judgment was duly given and made by said Court in said action in favor of the plaintiff herein and against the defendants Charles E. Monson and Nellie Monson herein. . . . "

The answer of the defendants failed to set up any defense by way of estoppel by former judgment or "*res judicata*". But as hereinbefore has been indicated, the appellants urge the point that since the first action was for "specific performance", notwithstanding the fact that the judgment that was rendered therein was for "possession" only, plaintiff is thereby estopped from now maintaining an action for rentals that already had been, or which thereafter were collected wrongfully by the defendants or by their grantees.

██ Although it is a general rule that a judgment operates as an estoppel to the maintenance of a subsequent action as between those persons who were parties to the former action, not only as it may affect each issue that actually was raised in such action, but also as to every other issue which properly might have been litigated and determined therein, nevertheless, in each of many jurisdictions, exceptions to that rule have been announced, which include a situation wherein it has appeared that the questioned issue in the subsequent action was neither germane to nor essentially connected with the actual issues that were raised in the former action, even though, with propriety such issues might have been presented therein. (34 C. J. 818, 823.) ██ Nor is the rule applicable to rights, claims or demands, although growing out of the same subject matter, but which constitute separate or distinct causes of action, and which were not put in issue in the former action. (34 J. C. 823.) (See, also, to the same effect: *Humiston, Keeling & Co.* v. *Bridgman*, 195 Mich. 82 [161 N. W. 852] , *Townsley* v. *Niagara Life Ins. Co.*, 218 N. Y. 228 [112 N. E. 924] , *Cook* v. *Conners*, 215 N. Y. 175 [109 N. E. 78, Ann. Cas. 1917A, 248, L. R. A. 1916A, 1074], *Beavans* v. *Groff*, 211 Ind. 85 [5 N. E. (2d) 514, 108 A. L. R. 694], *Eisenberg* v. *Thorne*, 49 Misc. 617 [96 N. Y. Supp. 1020],

*Fourche River Lumber Co.* v. *Walker,* 96 Ark. 540 [132 S. W. 451], *Moore* v. *Snowball,* 98 Tex. 16, 24 [81 S. W. 5, 107 Am. St. Rep. 596, 66 L. R. A. 745], and *Paris* v. *Golden,* 96 Kan. 668 [153 Pac. 528, 529].) In the case of *Todhunter* v. *Smith,* 219 Cal. 690, 695 [28 Pac. (2d) 916], it was said: "The doctrine of *res judicata* has a double aspect. A former judgment operates as a bar against a second action upon the same cause, but in a later action upon a different claim or cause of action, it operates as an estoppel or conclusive adjudication as to such issues in the second action as were actually litigated and determined in the first action." And in *Beronio* v. *Ventura Co. Lumber Co.,* 129 Cal. 232, 236 [61 Pac. 958, 79 Am. St. Rep. 118], it was said, "In order that a judgment in one action may constitute an estoppel against the parties thereto in a subsequent action, it must be made to appear, either upon the face of the record or by extrinsic evidence, that the identical questions involved in the issues to be tried were determined in the former action . . . 'Every estoppel must be certain to every intent, and not to be taken by argument or inference.' (Coke on Littleton, 352b.) 'If upon the face of a record anything is left to conjecture as to what was necessarily involved and decided, there is no estoppel in it when pleaded, and nothing conclusive in it when offered in evidence.' . . . By section 1908, subdivision 2, of the Code of Civil Procedure, the effect of a judgment is conclusive 'in respect to the matter directly adjudged,' and, by section 1911, 'that only is deemed to have been adjudged in a former action which appears upon its face to have been so adjudged, or which was actually and necessarily included therein or necessary thereto.'" Also in the case of *Journe* v. *Hewes,* 124 Cal. 244, 254 [56 Pac. 1032], the rule is followed. There a lessee for a period of years had an option to purchase. After the lease had expired the lessee gave notice of his intention to purchase to a son of the lessor, the latter of whom was then deceased, and also to an agent of deceased in his lifetime, stating that he would pay for the property when the probate proceedings were concluded. About a year after the expiration of the lease, he brought an action to compel specific performance of his option to purchase. Thereafter an action was brought against him by his grantor for the collection of rentals alleged to have accrued prior to the time of conveyance. The defendant claimed that the action in specific performance established the relation of vendor and purchaser

and not that of landlord and tenant. The court there said: "It is sufficient answer to defendant's contention that the claim for rent presented in this action was not litigated in that proceeding so far as the petition and decree disclose what was done; and the question of defendant's liability for rent was not necessarily involved. . . . " Also in the case of *Buick* v. *Boyd*, 37 Cal. App. 508 [174 Pac. 913], the same principle is followed. There the court said, "The present action is different from the original action, and the rule is that in such case the judgment in the first action operates as an estoppel only as to those matters actually litigated and determined and not as to matters which might have been litigated." (To the same effect, see, also: *Lillis* v. *Emigrant Ditch Co.*, 95 Cal. 553 [30 Pac. 1108], *McCormick* v. *Gross*, 135 Cal. 302 [67 Pac. 766], *Patterson* v. *Mills*, 138 Cal. 276 [71 Pac. 177], *St. John* v. *Consolidated Const. Co.*, 182 Cal. 25 [189 Pac. 276], and *Richardson* v. *City of Eureka*, 110 Cal. 441 [42 Pac. 965].)

 From the foregoing, in the instant case, it becomes obvious that even though it be conceded that after the plaintiff, within its contractual rights in the premises, had properly demanded of the defendants that they surrender possession of the affected property to the plaintiff, and thereupon that the defendants had refused to deliver such possession—in the ensuing action for specific performance an issue of damages on account of rents of the property that either theretofore or thereafter had been, or which might be collected by the defendants, might have been raised in such action—nevertheless it was not a necessary or indispensable issue therein. To the contrary, it was incidental only to the main issue in the action, and may be considered as constituting a separate and distinct cause of action. The justice of such conclusion may become more readily discernible when it is remembered that but twelve days had elapsed between the date when demand for possession was made, and that upon which the action for possession was commenced; and that although approximately two months thereafter judgment in that action was rendered, the defendants or their grantees remained in possession for more than three months following the date of the rendition of such judgment—thereby causing additional and unanticipated damages to the plaintiff. It also should be noted that instead of awarding damages for rentals that had been collected by the defendants or by their

grantees during the entire time that they unlawfully retained possession of the property, by the terms of the judgment the defendants were excused from liability for more than two months of such period.

It becomes unnecessary to devote attention to any of the other points that have been suggested by the respective parties to the appeal, including those which relate to the effect of the allegations that are contained either in the complaint or in the answer, particularly with respect to the plea of estoppel by judgment or *"res judicata"*.

The judgment is affirmed.

Shenk, J., Curtis, J., Langdon, J., Edmonds, J., and Waste, C. J., concurred.

Rehearing denied.