[Civ. No. 7090. Third Dist. Feb. 26, 1945.]

Estate of EDWARD A. PALM, Deceased. FRANK WEBER, as Administrator With the Will Annexed, etc., Appellant, v. ELMER E. PALM et al., Respondents.

Thomas B. Leeper for Appellant.

Elmer W. Armfield and Arthur B. Eddy for Respondents.

THE COURT.—Frank Weber, as administrator with the will annexed of the estate of Edward A. Palm, deceased, has appealed from an order revoking his letters on the grounds of mismanagement and possession of interests adverse to the estate. He has also appealed from that portion of an order settling his first and second accounts which relates to the disallowance of interest on two notes secured by trust deeds on certain property belonging to the estate.

Edward A. Palm and Wilhelmina Palm were husband and wife. Respondents are their son and daughter respectively. The spouses were possessed of an estate of considerable value, including an undivided one-half interest in a Yolo County ranch and the entire community interest in another ranch in Sacramento County. On October 1, 1930, the spouses and Mary K. Holland executed a promissory note payable to Frank Weber, for the sum of $10,000, secured by a trust deed on the Yolo County farm. Mary K. Holland owned an undivided one-half interest in the last mentioned ranch. She subsequently deeded her interest in that ranch to Mr. Weber in full payment of her share of indebtedness on that note. February 3, 1933, the spouses executed a promissory note payable to Frank Weber for the sum of $31,152.30 secured by another trust deed on the Sacramento ranch. December 7, 1934, Edward A. Palm died testate. His wife, Wilhelmina, who was the sole beneficiary under his will, was duly appointed and qualified as executrix. May 25, 1935, Weber's claim against the estate for said indebtedness was approved and filed in the total sum of $44,084.95. November 20, 1935, Wilhelmina Palm resigned as executrix, and upon her nomination Frank Weber was appointed and qualified on December 9, 1935, as administrator of said estate with the will annexed. An inventory was filed in the estate appraising the Sacramento ranch at $30,000. There is evidence that values of real prop-

erty have recently increased and that said ranch is now worth in excess of $35,000.

The evidence shows and the trial court found that at the time Weber took over the operation of the property and assumed his duties as administrator, the property was not in a condition to produce to advantage; that the Yolo County land was planted to pear trees that were diseased and had to be removed, and that the Sacramento County property was planted to prune trees that were unprofitable; that Weber removed the trees from the lands and planted the Yolo ranch to grain, and the Sacramento property in hops, the latter crop proving highly successful and profitable. Thereafter Mr. Weber operated the hop ranch and rebuilt a hop dryer which was destroyed by fire, advancing his own moneys for the benefit of the estate. He also cared for the other property of the estate. He paid bills of the estate, including a portion of his own claim. He maintained a bank account in his name as administrator, from which expenses and costs of administration of the estate were paid by checks. June 22, 1937, Wilhelmina Palm signed a document by the terms of which she "consents to and confirms all the acts and management of Frank Weber, as administrator . . ." and also "waives the reporting of any of said acts to the court or obtaining the confirmation of said acts by the court." May 31, 1940, Mrs. Palm signed a similar document ratifying all acts of Mr. Weber, performed as administrator, including the borrowing and expenditure of money, the making of improvements and the handling of the estate. No account was filed in the estate by Mr. Weber during the lifetime of Mrs. Palm. She died March 11, 1941.

December 2, 1941, after the death of their mother, E. E. Palm and Florence E. Farris, a son and daughter of the deceased, gave notice to Mr. Weber to show cause why he should not file an account of his administration of the estate. That motion was not heard or determined. In June, 1942, the administrator filed his first account. January 5, 1943, E. E. Palm and Florence E. Farris, the previously mentioned heirs, filed objections to that account. February 10, 1943, the administrator filed a "Second Annual Account and Report of Frank Weber, Administrator." May 25th of that year the same heirs filed objections to that account. After hearing

upon said accounts, both the first and the second accounts were settled by the court December 16, 1943.

It appears from the findings adopted by the court on the motion to revoke the letters that on December 2, 1942, the administrator published notice of probate sale of said hop ranch, and sold the same to Sophie Oeste for $28,000 subject to approval; that the reasonable value of said ranch was not less than $35,000; that upon return of said sale to the probate court said heirs filed their objections to confirmation, and said sale was abandoned. Regarding said sale the court further found that Frank Weber persuaded Sophie Oeste to bid $28,000 for said hop ranch promising to protect her against higher bids therefor, agreeing that if higher bids were offered he would bid in the property for any necessary amount with which to purchase it "up to the sum of $35,000," and convey it to her for said sum of $28,000.

The administrator testified that he handled said hop ranch as the property of the estate of Edward A. Palm, deceased, until "sometime in June of 1943," after which he claimed the right to, and managed it *as mortgagee and trustee in possession of the property.* On March 5, 1943, Mr. Weber procured notice to be given of sale of said hop ranch under his trust deed, as required by section 692 of the Code of Civil Procedure.

September 20, 1943, the petition to revoke the letters of administration with the will annexed was filed, upon the grounds of alleged mismanagement, and possession and exercise by the administrator of an interest in property adverse to the estate. After complete hearing on said petition the court adopted findings adverse to the administrator on the essential issues involved and thereupon revoked his letters upon the grounds previously mentioned.

The findings on the motion to revoke the letters consist of twenty-four pages of recitations of facts and figures determining numerous amounts loaned to the estate by the administrator in the course of administration by him, the sums expended by him in full payment of all claims other than his own claim, the various amounts credited by him to the payment of principal and interest on his own claim, and the sums paid by him for improvements and costs of operating the ranches and property of the estate during his administration covering a period of about seven years, without any order

of court or subsequent approval by the court. The court does not specifically find that any designated payments were wrongfully or fraudulently made, except that it does find that Mr. Weber *waived the interest* prior to December 21, 1942, on his allowed claim secured by his trust deeds, the inference being that he therefore wrongfully paid himself such items of interest. But the court did specifically find that the administrator's said claim secured by trust deeds constituted a claim adverse to the interest of the estate and to the heirs of the deceased, and that he asserted and testified on September 25, 1943, that he held the hop ranch *as a beneficiary and mortgagee in possession of the ranch,* and not as administrator.

The court found that notwithstanding the solvency and prosperity of the farming enterprise of the estate from which "there was produced on and sold from the said hop ranch," during the years 1938 to 1942, inclusive, crops "in the amount of not less than $142,000.00," and that the products of said ranch during the year 1943 "will not be less than $50,000," the administrator failed to satisfy his own claim in full, and took no steps to renew or to refinance the mortgage claim, or to avoid foreclosure, although "under proper management the said claim can be fully paid . . . by the income which would be derived from the proper farming of said lands in the course of two years." On the contrary, the court found that the administrator gave notice of probate sale of the hop ranch to Sophie Oeste for $28,000, although it was appraised at $30,000, and that it was worth at least $35,000, and that he agreed to protect her bid therefor against any increased bid in open court up to the sum of $35,000, and in the event of such increased offer, he would bid the property in and convey it to her for said sum of $28,000. Finally, the court found that the administrator, on March 5, 1943, commenced proceedings under section 2924 of the Civil Code to foreclose his said trust deed.

Upon those findings of facts the court concluded that the administrator held an interest in property of the estate adverse thereto; that he exercised acts hostile to the estate and detrimental thereto in regard to that interest; that he had mismanaged the estate, and would continue to do so if permitted to continue as administrator, and that it was for the

best interest of the estate that his letters be revoked. The court thereupon ordered that his letters be revoked. From that order this appeal was perfected.

It is not necessary for this court to determine whether the findings and evidence sufficiently support the court's determination that the administrator mismanaged the estate. ▇ Mismanagement of an estate which may authorize the revocation of letters under section 521 of the Probate Code does not necessarily mean that the executor or administrator shall be guilty of fraud or of wilful or deliberate acts detrimental to the estate. The term "mismanage" has been construed to mean merely that the business of the estate has been badly, improperly or unskillfully conducted. (*McKnight* v. *United States*, 78 F.2d 931, 933.) ▇ Regardless of whether the evidence in this case satisfactorily shows mismanagement of the estate on the part of the administrator, there is adequate proof to support the findings that he holds an allowed claim secured by trust deeds on the ranches which constitute the chief asset of the estate, adverse to the interests of the estate and the heirs of the deceased, and that he has asserted rights and performed acts hostile and detrimental thereto. That is sufficient ground for the revocation of the letters of administration with the will annexed.

We also assume that the claim which the administrator made for the first time in June, 1943, more than two years after the death of Mrs. Palm, the mortgagor, that he then held the hop ranch as a beneficiary and *mortgagee in possession*, was adverse and inimical to the rights and interest of the estate and the heirs. The court specifically found that Frank Weber took possession of the ranch as representative of the estate and not otherwise. The facts support that finding. The rights and advantages which accrue to a mortgagee who is given possession of real property by the mortgagor are quite different from and superior to the mere rights of a mortgagee or a beneficiary under a trust deed. (*Spect* v. *Spect*, 88 Cal. 437 [26 P. 203, 22 Am.St.Rep. 314, 13 L.R.A. 137]; *Title Guarantee & Trust Co.* v. *Monson*, 11 Cal.2d 621 [81 P.2d 944]; 41 C.J. § 581, p. 613; 17 Cal.Jur. § 299, p. 1028.) For instance, the authority last cited declares that:

"The right [of a mortgagee in possession of land by consent of the mortgagor] to retain possession is independent and distinct from any right springing from the mortgage; it is a

right additional to and independent of, not coincident with, the right to foreclose the mortgage, . . . . The fact that the mortgage debt is barred by the statute of limitations, therefore, does not affect the rule that a mortgagee in possession cannot be ejected nor interfered with by the mortgagor, until payment of the debt. The debt is not satisfied by mere lapse of time.''

The probate court possesses a wide discretion in determining whether the facts of a particular case warrant the removal of an administrator. Except for a clear abuse of that discretion, its order either removing an administrator for violation of his trust, or refusing to do so, may not be interfered with on appeal. That rule is applicable even though the evidence is of such nature that reasonable minds would differ regarding the facts. (*Estate of Healy,* 137 Cal. 474 [70 P. 455]; *Estate of Watterson,* 130 Cal.App. 741 [20 P.2d 772]; 11A Cal.Jur. § 283, p. 403.) An executor or administrator is a quasi trustee of the estate which he represents. That relationship is fiduciary in its nature with respect to the heirs and the creditors. (*Estate of Conkey,* 35 Cal.App.2d 581, 585 [96 P.2d 383]; 11A Cal.Jur. §§ 22 and 23, p. 72; 2 Bancroft's Probate Pr. § 338, p. 644.) An administrator with the will annexed may have less discretionary power in handling the affairs of an estate than an executor. Section 409 of the Probate Code provides in part that: ''If a power or authority conferred upon an executor is discretionary, and is not conferred by law, it shall not be deemed to be conferred upon an administrator with the will annexed.'' In 2 Bancroft's Probate Practice, page 648, section 339, it is said regarding the fiduciary relationship of an executor or an administrator:

''The relations of both executors and administrators to the estate and to those they represent are confidential and fiduciary, and they act in a highly fiduciary character in their dealings with the estate and its funds.''

The powers of an executor or an administrator are limited to the authority conferred upon him by law. (11A Cal.Jur. § 22, p. 75.) In 11B California Jurisprudence, page 213, section 811, it is said in that regard:

''The powers of an executor are such as are given by statute, including those which the statute authorizes the testator to confer upon him; and the extent to which the legislature has

authorized the exercise of these powers is to be determined from a consideration of the entire legislation upon the subject.''

▉ It is the duty of an executor or administrator to take possession of the property of an estate and to preserve it for the benefit of the heirs and the creditors, but his possession and handling of the property are subject to the control of the probate court. (*County of Los Angeles* v. *Morrison*, 15 Cal.2d 368, 371 [101 P.2d 470, 129 A.L.R. 443]; Prob. Code, § 300; 11 Cal.Jur. § 6, p. 214.)˙ In the Morrison case, *supra*, it is said:

˙ ''The probate court or judge is the guardian of estates of deceased persons and all proceedings are under the direction of the judge. An executor or administrator derives his power to act from the order of the court.''

Of course a representative of an estate may be specifically authorized by statute, or be given implied authority of law for the preservation of the estate, to perform many acts without first procuring orders of the court therefor, but ordinarily such acts are subject to the approval of the probate court. Section 300 of the Probate Code provides in part:

''All of his [the decedent's] property shall be subject to the possession of the executor or administrator *and to the control of the superior court for the purpose of administration*, sale or other disposition. . . .''

▉ An administrator of an estate may be removed and˙ his letters revoked when it appears that he possesses an interest˙ in property of the estate and performs acts with relation thereto inimical to the rights and interests of the heirs or creditors. (*Estate of Bell*, 135 Cal. 194 [67 P. 123]; *Estate of Withington*, 60 Cal.App.2d 105 [140 P.2d 491]; *Estate of Newell*, 18 Cal.App. 258 [122 P. 1099]; 11A Cal.Jur. § 25, p. 77.) In the authority last cited it is said: ''If a personal representative occupies a position hostile to the estate he may not represent it.''

In the present case we assume that the administrator's failure to attempt to retain and preserve for the benefit of the estate and heirs the hop ranch, which was evidently a valuable and productive asset, and his effort to sell it through the probate court for much less than its appraised or actual value, with an agreement to increase any open court bids thereon up to the sum of $35,000, and to sell it to the prospective pur-

chaser for the sum of $28,000, on the assumption and claim that he was not required to account to the probate court for its actual value, constitute acts inimical to the estate and to the heirs, which fully warranted the court in revoking his letters. Such conduct has been held to constitute mismanagement of the administration of an estate warranting the revocation of letters of administration. It is only fair to Weber to state, however, that the evidence shows that he took over the management of the property at the request of Mrs. Palm, and because she was unable to manage it and to finance the necessary improvements thereon; that he devoted his time and attention to it and advanced his own moneys for its benefit, and that by reason of his management it was improved and rendered profitable; and that the trial court in the course of the proceedings stated that Weber's conduct had been "honest and upright."

■ The appellant was not prejudiced by denial of his motion to quash the citation to show cause why his letters of administration should not be revoked, for the reason that he subsequently appeared with counsel and participated in the entire proceedings. A petition was filed under section 521 of the Probate Code by certain heirs of the deceased to revoke the letters for mismanagement of the estate. The judge of the probate court signed an order directing the administrator to show cause at a time and place specified why his letters should not be revoked for the reasons assigned in the petition. No citation was issued by the clerk under the seal of the court as required by section 1206 of the Probate Code. But both the petition and the order of the court fixing the time of hearing were served on the appellant. He appeared specially in court at the time fixed with his attorney and moved to dismiss the proceeding for lack of jurisdiction. The motion was denied. He then remained in court with his attorney and participated in all the proceedings. He was fully heard upon the merits of the petition with opportunity to adduce all material evidence. There is no showing that he was prejudiced in any respect by the order denying his motion to dismiss the proceeding. While he did appear specially for the purpose of his motion to dismiss, he voluntarily remained and participated in the subsequent proceedings on the merits. By that voluntary participation in proceedings he waived the in-

formality of the issuance of the citation. (*Raps* v. *Raps*, 20 Cal.2d 382 [125 P.2d 826]; *Abila* v. *Padilla*, 14 Cal. 103; *Estate of Maescher*, 78 Cal.App. 189, 198 [248 P. 537]; 11A Cal.Jur. § 95, p. 163; 1 Bancroft's Probate Pr. § 58, p. 109.) In *San Francisco Protestant Orphan Asylum* v. *Superior Court*, 116 Cal. 443 [48 P. 379], it is said that the application of the statutes with relation to summons does not govern the issuance of citations; that the functions of citations are "very unlike those of a summons." In a probate proceeding the court has jurisdiction of the rem. The office of the citation is to give notice of a proceeding and to procure the presence of the persons involved. It is not jurisdictional in the same sense that a summons may be. (11A Cal. Jur. § 91, p. 157.)

For the reasons heretofore mentioned, the order revoking the letters should be affirmed.

█ This brings us to a consideration of the appeal from that portion of the order settling the first and second accounts which disallows credit for certain payments of interest which Weber made to himself as interest on the notes secured by his trust deeds, which interest the court held had been specifically waived. We are persuaded the court erred in disallowing those interest items. The so-called waiver dated April 20, 1942, upon which the court evidently chiefly relied, was merely an offer by Weber to waive on condition that he not be required to file an accounting. We are of the opinion the conditions upon which the waiver was specifically based failed, and that the waiver of interest was therefore ineffectual. The essential language of that instrument, applicable to the alleged waiver of interest, reads as follows:

"The undersigned has waived and does hereby waive any right to any and all interest due upon said claim of $36,532.50, *down to this date,* . . . .

"Said waiver of said interest against said estate for said time *is made upon the express condition and understanding* that none of the heirs of said estate nor any of the other creditors nor any future administrator nor the court, shall demand or require an accounting from the undersigned or his executor of his administration of said estate or the handling or dealing with all the money, property, or affairs of said estate, and said heirs shall, if requested so to do, file a written waiver of all or any of said accounts. *Any breach of any of these con-*

*ditions by any of said parties shall entitle the undersigned or his executor to collect all of said interest which has been so conditionally waived.*

"Dated: April 20th, 1942.

(Signed)     Frank Weber."

It is immaterial whether the administrator could bind either the heirs or the court to an agreement to give him a free hand to receive and disburse money, lease, sell or dispose of real or personal property, make improvements, or handle the affairs of the estate without being required to render any account of his fiduciary transactions. But clearly he agreed to waive his interest on the secured claim prior to December 21, 1942, only on condition that he should be permitted to act as administrator without interference or the necessity of accounting. The evidence is undisputed that he was not permitted to so handle the estate without accounting in detail to the court. It is true that he did handle the estate in that manner without rendering any account for a period of about seven years, and that Mrs. Palm, the sole beneficiary under her husband's will, in June, 1937, and again in May, 1940, confirmed in writing all of his acts as such administrator. Mrs. Palm died in March, 1941. The following December, and prior to the filing of the so-called waiver, E. E. Palm and Florence E. Farris, two of the children of Mr. and Mrs. Palm, and heirs of their estates, procured and served upon the administrator a citation from the probate court to show cause why he should not render an accounting of his administration. The hearing of that citation was continued from time to time, without disposing of it. But it was kept alive. These heirs insisted on the filing of that account. Evidently the hearing on the citation was continued by consent to enable the administrator to prepare and file his account. The attorney representing the above-named heirs wrote to the attorney of the administrator two letters insisting on the filing of the account. One letter was dated April 23, 1942, and the other was dated May 18th, of the same year. In the first letter he said:

"After a full consideration of the entire matter Mrs. Farris and Mr. E. E. Palm, whom I represent, have instructed me to proceed with the proceedings heretofore filed by me looking to the filing of an account by Mr. Frank Weber, the administrator in the above entitled estate."

In the second letter the attorney for the heirs said:

"Mr. E. E. Palm and Florence E. Farris after considering the matter of accounting have instructed me to proceed forthwith and require the filing of an accounting. Therefore, I have no other alternative in the matter than to proceed with the motion for an order directing the administrator to account."

Pursuant to that demand of the heirs, the administrator filed his first account in June, 1942, to which account the heirs filed detailed objections. The following February the administrator filed his second account, to which the heirs also filed objections. It is evident that the administrator filed his accounts because of the insistent demands of the heirs. The accounts were not voluntarily filed as the respondents assert.

Clearly, the requirement on the part of the heirs for the administrator to render his accounts, and the oppositions which they filed thereto, wise and justifiable as they may have been, were conduct in violation of the sole condition upon which the interest on the secured claim was to be waived. That interest was a part of the allowed claim to which he was legally entitled. The written waiver of interest specifically provides that for breach of that condition Mr. Weber, who signed the document, would be entitled "to collect all of said interest which has been so *conditionally waived.*"

That portion of the order settling the accounts from which the appeal was perfected is reversed, and the trial court is directed to amend its findings and order settling first and second accounts in accordance with this opinion and to allow appellant all interest due and unpaid upon his claim previously approved and allowed by said court.

The order revoking the letters of administration with the will annexed is affirmed.

The administrator is entitled to recover his costs on appeal.

Petitions for a rehearing were denied March 27, 1945, and appellant's petition for a hearing by the Supreme Court was denied April 26, 1945. Carter, J., voted for a hearing.