In re 500 YGNACIO ASSOCIATES,
LTD., etc., Debtor.

500 YGNACIO ASSOCIATES,
LTD., etc., Plaintiff,

v.

AETNA LIFE INSURANCE
COMPANY, Defendant.

Bankruptcy No. 91–46168 N.
Adv. No. 91–4605.

United States Bankruptcy Court,
N.D. California.

Feb. 18, 1992.

Lynn Anderson Koller, Koller, & Mac-Conaghy, Emeryville, Cal., Charles A. Hansen, Wendell, Rosen, Black, Dean & Levitan, Oakland, Cal., for debtor/plaintiff.

Shelly, Rothschild, James B. Hicks, Andrews & Kurth, Los Angeles, Cal., Dennis B. Arnold, Gibson, Dunn & Crutcher, San Francisco, Cal., for defendant.

### AMENDED MEMORANDUM
### OF DECISION

LESLIE TCHAIKOVSKY, Bankruptcy Judge.

Defendant Aetna Life Insurance Co. ("Aetna") moves to dismiss the complaint in the above-captioned adversary proceeding for failure to state a claim upon which relief may be granted. For the reasons stated below, the motion is granted without prejudice.

### SUMMARY OF FACTS

Plaintiff 500 Ygnacio Associates, Ltd. (the "Debtor"), the debtor-in-possession in the above-captioned chapter 11 case, owns real property in California (the "Real Property") which generates rents (the "Rents"). Aetna holds a security interest in the Real Property. Aetna also holds an absolute assignment of the Rents conditional only on the Debtor's default (the "Assignment of Rents"). The Real Property and the Rents secure a debt in the principal amount of $18,900,000 (the "Debt").

The Debtor defaulted on its obligations to Aetna with respect to the Debt. Aetna filed an action in Contra Costa County Su-

perior Court for the appointment of a receiver.[1] Simultaneously, as permitted by the Assignment of Rents in the event of a default by the Debtor, without taking possession of the Real Property, Aetna gave notice to the tenants to pay the Rents directly to Aetna. In this manner, Aetna collected approximately $200,000 in Rents (the "Collected Rents"). Aetna did not use any portion of the Rents to pay the operating expenses of the Real Property. It is unclear whether Aetna has applied the Rents to the Debt. The complaint requests a determination that, by its conduct, Aetna has waived its security interest in the Real Property pursuant to Section 726(a) of the California Code of Civil Procedure (hereinafter "Section 726").

## DISCUSSION

Aetna moves to dismiss the complaint on the ground that the complaint fails to state a claim upon which the relief requested may be granted. F.R.B.P. 7012(b) (incorporating by reference F.R.C.P. 12(b)(6)). Aetna contends that its conduct did not result in a waiver of its security interest under Section 726 as a matter of law. The Court agrees.

The Debtor makes three distinct arguments in support of its claim. First, it contends that Aetna had a security interest in only a portion of the Collected Rents. By collecting the unencumbered as well as the encumbered portion of the Collected Rents, Aetna was enforcing its underlying claim rather than foreclosing its security interest. This triggered the sanction effect of Section 726 and waived Aetna's security interest. (See discussion in Section A below.) Second, the Debtor contends, the Deed of Trust and Assignment of Rents require Aetna, if it collects the Rents, to pay the operating expenses of the Real Property and apply the balance of the Collected Rents to the Debt. By failing to comply with its contractual obligations, Aetna also triggered the sanction effect of Section 726. (See discussion in Section B below.) Third, the Debtor contends, if Aetna did apply the Collected Rents to the Debt, it violated Section 726 by failing to exhaust the real property security first. Again, the Debtor contends, the result is the loss of Aetna's security interest.[2]

## A. WAIVER BY RETENTION OF UNENCUMBERED PORTION OF RENTS

■ The Debtor's first argument may be disposed of quickly. The language of the operative documents simply does not support it. The Deed of Trust clearly gives Aetna a security interest in all the Rents. The Assignment of Rents assigns to Aetna all the leases and their proceeds. The language quoted by the Debtor in support of its position does not purport to describe the scope of Aetna's security interest.

## B. WAIVER BY BREACH OF SECURITY AGREEMENTS

■ The Debtor's second argument is only slightly more substantial. The Debtor contends that the Deed of Trust and Assignment of Rents require Aetna to use the Collected Rents to pay the operating ex-

---

1. This chapter 11 case was filed before a receiver could be appointed. The automatic stay of 11 U.S.C. § 362 stays the prosecution of that state court action.

2. At the hearing on the motion, the Debtor advanced a fourth argument: that a secured creditor with an absolute assignment of rents, upon default, automatically becomes a mortgagee-in-possession and thus responsible for the expenses of the real property, whether or not it actually receives the rents. This argument was not made in the Debtor's brief and thus is not properly before the Court. In any event, the argument has no merit. The case cited by counsel at the hearing in support of this proposition—*Johns v. Moore,* 168 Cal.App.2d 709, 336

P.2d 579 (1959)—does not in fact support it. In *Johns v. Moore,* the secured creditor was obviously a mortgagee-in-possession. *Id.,* at 712, 336 P.2d 579. Not only has the Court found no authority to support this argument, it seems clearly contrary to the well defined distinction between the rights and duties of a holder of an absolute assignment of rents as compared to one with an assignment of rents as security. *Cf., In re Ventura–Louise Properties,* 490 F.2d 1141, 1143–1145 (9th Cir.1974); *Strutt v. Ontario Savings and Loan Association,* 28 Cal.App.3d 866, 880–881, 105 Cal.Rptr. 395, 405 (1972); *Kinnison v. Guaranty Liquidating Corp.,* 18 Cal.2d 256, 260–262, 115 P.2d 450 (1941).

penses and to apply the balance of the collected rents to the Debt. It further contends that, because Aetna did not comply with its agreements with the Debtor in these respects, Aetna may not be deemed to have been enforcing its security interest in the Collected Rents. As a consequence, it must be deemed to have been enforcing its underlying claim, thereby waiving its security interest.[3]

It is well established that a creditor with real property collateral may not waive its security and seek a money judgment on the underlying claim. If it does so, the debtor may require the creditor to include the security and to exhaust it before obtaining a deficiency judgment. *Walker v. Community Bank*, 10 Cal.3d 729, 733–734, 111 Cal.Rptr. 897, 899–900, 518 P.2d 329, 331–332 (1974). However, the debtor may waive this right and permit the creditor to proceed to judgment. If the creditor does so, or at least if the judgment is enforced, the creditor will have waived its security pursuant to Section 726. *Salter v. Ulrich*, 22 Cal.2d 263, 138 P.2d 7 (1943) (creditor waived its security interest by enforcing money judgment); *In re Kristal*, 758 F.2d 454 (9th Cir.1985) (creditor waived security interest by enforcing judicial foreclosure judgment as if it were money judgment prior to judicially selling property).

Other acts by a creditor short of obtaining and enforcing a money judgment have also been held to waive the creditor's security interest. Courts have consistently held that a creditor waives its security interest pursuant to Section 726 by exercising a banker's right to offset its claim against the debtor's deposit account. See, e.g., *Se-*

*curity Pacific National Bank v. Wozab*, 51 Cal.3d 991, 999–1000, 275 Cal.Rptr. 201, 206, 800 P.2d 557, 561–562 (1990) and *Bank of America v. Daily*, 152 Cal.App.3d 767, 771, 199 Cal.Rptr. 557, 559 (1984). The underlying principle of all these cases is that a creditor with real property security may not take effective action on its unsecured claim without losing its security.

A recent case—*Great American First Savings Bank v. Bayside Developers*, 232 Cal.App.3d 1546, 284 Cal.Rptr. 194, 201 (1991)—does not fit neatly within this rule. In *Bayside Developers*, a creditor was held to have waived its security interest by accepting the proceeds of a Court-approved negotiated sale by a receiver of a portion of the creditor's collateral. The *Bayside Developers* Court compared the creditor's acceptance of the sale proceeds to the application of rents collected pursuant to an assignment of rents. It noted in passing the following comment from a legal treatise:

> ... the disbursement of the collected proceeds [i.e., the rents] to the lender in partial satisfaction of its debt may be construed by courts as being analogous to a setoff.

232 Cal.App.3d at 1558, 284 Cal.Rptr. at 200, quoting from California Real Property Financing (Cont.Ed.BarSupp.1991) section 6.5, page 40.

To this extent, *Bayside Developers* has some tenuous connection to the Debtor's second argument. However, it does not stand as authority for that argument for two reasons. First, the Debtor's second argument assumes that Aetna did not apply the Collected Rents to the Debt. Thus,

---

3. The Debtor contends that the Deed of Trust and Assignment of Rents are at least ambiguous and may be read to require Aetna to use any rents collected to pay the operating expenses and to apply the balance to the Debt. Thus, the Debtor contends, the motion to dismiss should be denied, and it should be permitted to conduct discovery and introduce parol evidence to establish the meaning of the agreements. The Court agrees that the agreements are to some extent ambiguous. Thus, for the purposes of this motion, the Court will accept the Debtor's reading of the agreements. Motions to dismiss are disfavored. Any doubts concerning the moving party's entitlement to dismissal must be re-

solved against the moving party. *Williams v. Gorton*, 529 F.2d 668, 672–673 (9th Cir.1976); *Airline Car Rental v. Shreveport Airport Authority*, 667 F.Supp. 293, 295–296 (W.D.La.1986). All factual allegations of the complaint must be accepted as true and construed in the light most favorable to the plaintiff. *Swensen v. Murchison*, 507 F.Supp. 509, 514 (N.D.Cal.1981). When factual issues exist, the motion should be denied. The parties should be allowed to conduct discovery and present evidence. *Timberlane Lumber Co. v. Bank of America, N.T. & S.A.*, 549 F.2d 597, 602–603 (9th Cir.1976); *Sun Valley Gasoline, Inc. v. Ernst Enterprises, Inc.*, 711 F.2d 138 (9th Cir.1983).

even if application of rents collected under an assignment of rents could properly be compared to a setoff, the collection of rents alone could not be. Second, in essence, the Debtor's second argument is that Aetna waived its security interest by breaching its contractual obligations under the Deed of Trust and Assignment of Rents. However, the creditor in *Bayside Developers* did not breach its agreements with its debtor. Any inappropriate action in that case was taken by the receiver and approved by the state court. The creditor was merely complying with its contractual obligations by releasing its lien upon the parcels sold upon receipt of the specified release price.

The normal remedy for breach of contract is a claim for damages. Cal.Civ.Code §§ 3274, 3281. The Debtor appears to contend that, when the contract breached is a security agreement covering real property, the remedy is the loss of the creditor's security. Since the Debtor has cited no statute or reported case that supports this proposition, this argument must fail.[4]

## C. WAIVER BY APPLICATION OF RENTS PRIOR TO SALE OF REAL PROPERTY

The Debtor's third argument assumes the Debtor *has* applied the Collected Rents to the Debt. If so, according to the Debtor, Aetna has waived its security interest for another reason. The Debtor contends that Section 726 requires Aetna to refrain from foreclosing its security interest in personal property—*i.e.*, the Rents—until the real property collateral is exhausted. By applying the Collected Rents to the Debt prior to foreclosing its security interest in the Real Property, Aetna may have complied with its contractual obligations.

However, it waived its security interest under Section 726.

Again, the Debtor relies principally on *Bayside Developers*. In the portion of the decision relevant to this argument, the *Bayside Developers* Court relies on a second comment from a legal treatise. That comment reads, in pertinent part, as follows:

> The objective of the receivership is to collect rents to be applied to the debt in the event the foreclosure sale produces an insufficient amount to satisfy the debt.... These proceedings would also seem to be within the objectives of CCP § 726 to prevent a multiplicity of suits and *to require the creditor to look first to the real property for satisfaction of the debt.* ... However, the mere filing of the action and the appointment of the receiver would not invoke the sanctions of CCP § 726, but the application of the rents to the debt ... may well invoke the sanctions. This effect could be avoided by the inclusion of a judicial foreclosure action and an order requiring the receiver to hold the rents pending the foreclosure by either a judicial or nonjudicial sale. (Emphasis added.)

*Bayside Developers*, 232 Cal.App.3d at 1557–1559, 284 Cal.Rptr. at 200–201, quoting from 4 Miller and Starr, Current Law of California Real Estate (2d ed. 1989) section 9:106, page 352, footnote 73.

The Court cannot harmonize the emphasized language with the reported cases on this subject. Such an argument was expressly rejected in *Title Guarantee & Trust Co. v. Monson*, 11 Cal.2d 621, 625, 81 P.2d 944. In *Monson*, after obtaining possession of the real property collateral pursuant to a judgment for possession, the

---

**4.** *Title Guarantee & Trust Co. v. Monson*, 11 Cal.2d 621, 81 P.2d 944 (1938) provides some support for the proposition that a secured creditor who takes possession of the collateral real property is obligated to pay the operating expenses. In *Monson*, the secured creditor sued the debtor for rents collected while the debtor wrongfully withheld possession of the real property after default and demand for possession. *Id.* at 624, 81 P.2d 944. The Court affirmed the trial court's deduction of the operating expenses paid by the debtor (or the subsequent owner of

the property) from the rents collected in calculating the damage award. *Id.* Thus, *Monson* might support a damage award against a secured creditor who had taken possession of real property collateral, collected rents, and not paid the operating expenses. It would not support such an award against a secured creditor who was entitled to collect the rents and did so without taking possession of the real property. Clearly, it would not support a holding that such a secured creditor had waived its security interest.

secured creditor sued the debtor for rents collected after default and demand for possession and prior to surrender of the real property. *Id.,* at 624. The debtor contended that the complaint failed to state a cause of action because it failed to allege that the real property had been sold for less than the balance of the debt. *Id.* at 625. The Court held that the secured creditor was entitled to the rents and was not obligated to foreclose its security interest in the real property first. *Id.*

Moreover, the Debtor's argument seems inconsistent with *Hatch v. Security–First National Bank,* 19 Cal.2d 254, 120 P.2d 869 (1942). In *Hatch,* it was contended that a creditor had waived its security interest in certain real property by failing to comply with the procedures for obtaining a deficiency judgment after nonjudicially selling both real and personal property. The Court rejected this argument and held that a secured creditor has a right to sell its collateral sequentially by nonjudicial sale without obtaining a deficiency judgment. Nothing was said about exhausting its real property security first. *Id.* at 261–262, 120 P.2d 869.

The author of the second treatise comment quoted in *Bayside Developers* may have had in mind a different sanction than a loss of the creditor's security interest— i.e., a loss of its right to a deficiency judgment. In *Mortgage Guarantee Co. v. Sampsell,* 51 Cal.App.2d 180, 124 P.2d 353 (1942), a receiver was appointed who collected and held the rents until after the real property collateral was sold under a power of sale. In that case, the debtor contended that the secured creditor had forfeited its rights to the rents collected by not obtaining their turnover prior to the nonjudicial sale of the real property, that to obtain them now would be enforcing a prohibited deficiency claim. *Id.* at 183, 124 P.2d 353. The Court rejected this proposition and characterized the creditor's claim to rents as a chattel mortgage. *Id.* at 186, 124 P.2d 353. As in *Hatch,* the Court held

that a creditor could sell its collateral nonjudicially in sequence. *Id.*

■ A creditor waives its right to a deficiency claim by foreclosing on any portion of its collateral nonjudicially. *Cornelison v. Kornbluth,* 15 Cal.3d 590, 602, 125 Cal. Rptr. 557, 565–566, 542 P.2d 981, 989–990 (1975). If an assignment of rents creates a chattel mortgage in the rents assigned, applying any rents collected to the debt may constitute a nonjudicial foreclosure and thus waive the creditor's right to a deficiency claim. However, it does not appear that the creditor would thereby waive its security.

One question remains: whether the fact that the Assignment of Rents was absolute changes this analysis. The Court concludes that it does not.

It might be argued that, if a creditor has an absolute assignment of rents, upon default, the rents become the property of the creditor, not its collateral. Thus, application of the rents to the debt could not be likened to foreclosure of a chattel mortgage.[5] However, this proposition appears inconsistent with the holding in *Matter of Charles D. Stapp of Nevada, Inc.,* 641 F.2d 737 (9th Cir.1981).

In *Charles D. Stapp,* the creditor had an absolute assignment of rents and, after default, gave notice to the tenants to pay the rents to the creditor. *Id.* at 738. The tenant ignored this notice and paid the rents to the debtor's bankruptcy trustee. After selling the real property collateral at a foreclosure sale, at which sale the creditor's debt was fully satisfied, the creditor attempted to require the trustee to pay over to it the rents wrongfully directed by the tenant to the trustee. *Id.* The Court held that the creditor had no right to the rents independent of the debt. *Id.* at 740. If the rents were properly viewed, upon default, as the creditor's property, the creditor in *Charles D. Stapp* should have been deemed entitled to the rents. The Court must conclude that, whether or not the assignment of rents is absolute, the credi-

---

5. Even if this were so, to prevail, the debtor would have to persuade the Court that application of its own property to the debt constituted the exercise of a debt collection device of an unsecured creditor.

tor has nothing more than a security interest in the rents.

In sum, as discussed above, applying the rents to the debt might result in the loss of a creditor's right to a deficiency judgment but not the loss of its security. The Debtor's third argument must also fail. The Court views *Bayside Developers* as an aberration which would not be followed by other California courts. There is no other authority of which this Court is aware for the proposition that real property security must be exhausted before personal property security is touched upon penalty of a loss of a creditor's security interest.

### CONCLUSION

Aetna's motion to dismiss is granted without prejudice. The Debtor has failed to state a claim upon which the relief requested—a declaration that Aetna has waived its security interest—may be granted. The Debtor may wish to amend the complaint to state a claim for damages. To properly state such a claim, the Debtor must allege that Aetna breached its contractual obligation to use any rents collected to pay the operating expenses and/or to apply any rents collected to the Debt. Alternatively or additionally, the Debtor may wish to seek a declaration that Aetna waived its right to obtain a deficiency judgment. To properly state such a claim, the Debtor must allege that Aetna applied the rents collected to the Debt. The Debtor will have 20 days from the date of entry of the order denying the motion to dismiss to file the amended complaint. Aetna is directed to submit a proposed form of order in accordance with the local rules of this Court.