[Civ. No. 5307.   Fourth Dist.   Apr. 19, 1956.]

Estate of ABKAR SETRAKIAN, Deceased.   SOUREN SETRAKIAN et al., as Executors, etc., Appellants, v. HASMICK S. BESOYAN et al., Respondents.

L. Kenneth Say for Appellants.

Crossland, Crossland & Richardson, William C. Crossland, James T. Barstow, Paul Staniford and Staniford, Harris & Loomis for Respondents.

MUSSELL, J.—Abkar Setrakian died on November 22, 1948, and his will was admitted to probate on December 24 of that year.   His sons, Souren Setrakian and Kourken Setrakian, qualified as executors on that date and since their qualification have managed the affairs of the estate.   The will provides that the testator's daughters, Hasmick S. Besoyan, Gladys Serabian, Kesana Setrakian and Zabelle DeOrian,

shall each be paid $125,000 in 15 annual installments from a trust fund comprised of the residue of the estate, and that his granddaughter, Pamela DeOrian, is to be paid a specific legacy of $10,000. It is conceded that these legacies have not been paid and that the executors have not been able to pay the costs of administration or the federal and state taxes.

It is conceded that the estate owes the respondent Mid-State Horticultural Company, a corporation (hereinafter referred to as "Mid-State"), the sum of $113,017.87, together with interest; that in 1953 this corporation made a cash loan to the estate to pay death taxes and to the executors individually to make loans of approximately $8,000 to each daughter, and that these loans are unpaid. The estate owns 50 per cent of the stock of Mid-State and approximately 25 per cent of the stock of Delkar Vineyards, Inc. (hereinafter referred to as "Delkar"). There are 7,000 outstanding shares of stock in Mid-State and 50 per cent thereof is owned by the decedent's brother, Arpaxat Setrakian, and his immediate family. Takouhi Setrakian, decedent's widow, owns 141 shares of Delkar independent of the estate, the estate of Abkar Setrakian owns 142½ Delkar shares, and Arpaxat and his family own 283½ shares, making a total of 567 shares outstanding.

On August 10, 1954, the respondents, Hasmick S. Besoyan, Gladys Serabian, and Zabelle DeOrian, individually, and as guardian ad litem of Pamela DeOrian, filed in the superior court a petition seeking a sale of the estate stock so that the debts and legacies could be paid and the estate closed. On October 25, 1954, following the first hearing on the petition for the sale of stock, the executors, without prior authority from or approval by the probate court, filed a certificate of election for the voluntary winding up and dissolution of Mid-State and Delkar under the provisions of sections 4600 and 4603 of the Corporations Code. The trial court restrained the executors from proceeding with the dissolution until the petition to sell stock had been heard, and in its subsequent order that the stock of both corporations be sold, ordered that the restraining order be continued until further order of the court.

During the hearing on the petition to sell stock, the court, with the consent and agreement of the parties, appointed three appraisers for the purpose of advising the court as to what was for the best interests of the estate and to enable

928

the court to determine whether or not "any offer made in court for the purpose of satisfaction was within the bounds of reason" and to determine "whether the action of dissolution was justified." The appraisers filed a voluminous and detailed report in which they fixed the net worth of Mid-State at $2,101,024.44 and Delkar at $1,396,746.78, making the gross value of the 7,000 shares of Mid-State, without the tax deductions and current debt deductions, approximately $300 per share, and the gross value of Delkar, without the deductions, at $2,460 per share. Certified public accountants testified as to the value of the shares of stock in both corporations and as to the various tax problems and tax deductions involved. One of the accountants fixed the value of Mid-State stock at $260 per share and Delkar at $2,150 per share, after making deductions for matters not considered by the appraisers. The trial court found in accordance with these values and further found:

"No. 12. That the decedent's estate has now been in the course of probate administration for over 6 years, and the reason said estate has not been heretofore expeditiously closed and distributed is that said estate has had no funds wherewith to pay the aforesaid debts, expenses of administration and legacy, which while not determinable with entire accuracy at this time, will approximate $170,000.00; That the decedent's estate has no workable or practicable way or method of raising the cash funds necessary to be raised in order to close and distribute the decedent's estate except by a sale or sales of capital assets of said estate, which said capital assets consist almost wholly of the shares of Midstate Horticultural Company and Delkar Vineyards, Inc."

On February 15, 1955, the court ordered the executors to sell all of the stock owned by the estate in both corporations for a price not less than $260 per share for Mid-State stock and not less than $2,150 per share for the stock in Delkar.

On February 23, 1955, the executors filed a notice of motion to set aside the findings of fact and conclusions of law and judgment and reopen the cause on the ground of newly discovered evidence. This motion was denied after hearing was had thereon and the executors appeal from said order of sale made and entered by the court on February 15, 1955.

Appellants present only two contentions on this appeal: (1) That the trial court erred in arriving at the value placed on the corporate stock in both the Mid-State and Delkar cor-

porations; and (2) That the court erred in restraining the executors from voluntarily dissolving the corporations and acted in excess of its jurisdiction sitting as a probate court. Appellants further state in their opening brief that the main question on appeal is whether or not the order directing the executors to sell shares of corporate stock is a valid and proper order.

The record shows that the estate involved at the time the petition to sell stock therein was filed had been in the course of probate administration for approximately six years and that there were insufficient funds to pay the debts, expenses, and legacies. Under such circumstances the respondents were entitled to petition the court for a sale of stock under the provisions of section 758 of the Probate Code. ▮ Section 771 of said code provides:

"Stocks . . . may be sold . . . and title thereto passed without the necessity of confirmation, upon obtaining an order of the court. . . . The order shall fix the terms and conditions of sale, and when the minimum selling price is fixed or when the securities are to be sold upon an established stock or bond exchange, or surrendered for redemption or conversion, no notice of sale or of such redemption or conversion need be given."

In the instant case the sale was ordered to be made by posting and publication of notice. Anyone interested in buying was free to bid, and the highest and best bidder, bidding equal to or more than the minimum price set by the court, would be the purchaser at such sale. The trial court found that the estate's only workable or practicable way or method of raising funds wherewith to close and distribute the estate was by a sale of the estate stock in both corporations, and endeavored to ascertain a minimum price therefor which would not be disproportionate to the fair value of the shares and at the same time not fixed so high as to deter a prospective buyer.

The inventory and appraisement of the estate was filed on March 9, 1953, and the appraised value of the stock involved was stated therein as 3,500 shares of Mid-State, $490,000, and 142½ shares of Delkar, $142,500. The reappraisement, after the filing of the petition herein, was 3,500 shares of Mid-State $1,050,512.22 and Delkar (142½ shares), $350,550, values substantially higher than fixed by the previous ap-

praisal. While the value of the Mid-State stock was fixed in the reappraisement at $300 per share and Delkar at $2,460 per share, these values were without deductions for taxes and other items and there was substantial testimony that after the necessary deductions were made, the fair value of Mid-State stock was $260 per share and Delkar $2,150 per share, as found by the trial court. We cannot say as a matter of law that the minimum price set for the sale of the stock involved was disproportionate to the value thereof or that the trial court abused its discretion in fixing the minimum amount of the bids therefor.

Appellants argue that the trial court should have followed the rules set forth in *Estate of Felton*, 176 Cal. 663 [169 P. 392] and *Estate of Rowell*, 132 Cal.App.2d 421 [282 P.2d 163], in determining the minimum price to be set for the sale of the corporate stock. However, the court in *Estate of Felton* did not attempt to lay down an exclusive rule or to foreclose consideration of relevant facts in determining the value of corporate stock. In that case it was held that a proper way to establish the market value, under the circumstances there shown, for the purpose of inheritance taxation, of shares of stock in a close family corporation, which have never been on the market and have never been sold privately, is to ascertain the value of the property represented by the corporation stock, and assign to each share its proportionate worth. In *Estate of Rowell*, this court, in commenting on the rule in the Felton case, held:

"We are not in accord with the contention of the inheritance tax appraiser that in all so-called 'close corporations,' where the shares of stock have never been upon the market, 'the *only* way to establish the market value of such shares of stock is to ascertain the value of the property which they represent, assigning to each share its proportionate worth.' (Italics ours.) While this may have been the only way of making such determination under the circumstances of that case, it is clearly not the *only* way in *all* so-called 'close corporations.' In the instant case there is no evidence that this is a 'close family corporation.' Secondly, it is not indicated that the deceased owned a majority interest in the shares of stock. There are many allowable factors which must be considered in determining not only the value of the assets but also the value of the stock in question. (Cal. Admin. Code, title 18, § 783, *supra*.)"

*Estate of Felton* and *Estate of Rowell* both involved the valuation of corporate shares for inheritance tax purposes, while in the instant action the trial court was endeavoring to fix the minimum sale price of the corporate shares at a price fair to the decedent's estate and not disproportionate to the value of such shares, and the stock was ordered sold to the highest bidder. The minimum prices set were greatly in excess of the values fixed by the inventory and appraisement filed on March 9, 1953. The trial court properly considered this report of the appraisers, the reappraisement and report, the testimony of the accountants, the necessary deductions to be made from the values fixed in the reappraisement report by reason of income tax liabilities, costs, and other factors in determining the minimum prices to be stated in the order of sale.

In *County Nat. Bank etc. Co.* v. *Sheppard*, 136 Cal.App. 2d 205, 213 [288 P.2d 880], the court said:

"In the Wain case, this court had occasion to approve the following statement of the rule: 'The actual value of corporate stock which has no market value, that is, where it is all common stock closely held and not listed or actively traded in on any stock exchange, is ordinarily determinable from the then net worth of the corporation divided by the number of bona fide shares issued and outstanding. For that purpose, evidence of the factors and elements, such as assets, liabilities, and all other matters pertinent to the value of the particular corporation involved, may be admitted and considered.' "

The trial court herein followed the rule there stated and we cannot say as a matter of law that it abused its discretion in fixing the minimum bid provided for or that the amount so fixed was disproportionate to the value of the stock.

The second and remaining contention of appellants is that the court erred in restraining the executors from voluntarily dissolving the corporation and acted in excess of its jurisdiction sitting as a probate court. This contention is without merit. Section 300 of the Probate Code provides as follows:

"When a person dies, the title to his property, real and personal, passes to the person to whom it is devised or bequeathed by his last will, or, in the absence of such disposition, to the persons who succeed to his estate as provided in Division II of this code; but all of his property shall be subject to the possession of the executor or administrator

and to the control of the superior court for the purposes of administration, sale or other disposition under the provisions of Division III of this code, and shall be chargeable with the expenses of administering his estate, and the payment of his debts and the allowance to the family, except as otherwise provided in this code."

In *County of Los Angeles* v. *Morrison,* 15 Cal.2d 368, 371 [101 P.2d 470, 129 A.L.R. 443], it is held that:

"The probate court or judge is the guardian of estates of deceased persons and all proceedings are under the direction of the judge. An executor or administrator derives his power to act from the order of the court." See also *Estate of Garnier,* 147 Cal. 457, 460 [82 P. 68]; *Estate of More,* 121 Cal. 635, 639 [54 P. 148]; and *Estate of Palm,* 68 Cal.App.2d 204, 212 [156 P.2d 62].

The executors herein attempted to bring about a voluntary dissolution of Mid-State and Delkar corporations pursuant to section 4600 et seq. of the Corporations Code. Their action in this respect was initiated while the trial court was considering the petition for the sale of the stock. The executors filed a certificate of election to wind up and voluntarily dissolve the two corporations without notice to the respondents, without prior application to the trial court therefor, and without its prior or subsequent approval. It clearly appears that under the provisions of section 300 of the Probate Code and the cases heretofore cited the probate court had jurisdiction over the estate for the purpose of administration and that the court could not be divested of its jurisdiction by the action of the executors in attempting to effect a voluntary dissolution of the corporation. Moreover, in this connection, the trial court found as follows:

"No. 15. That a voluntary dissolution of Midstate Horticultural Company and Delkar Vineyards, Inc., or of either of said corporations, under Section 4600 et seq., of the Corporations Code as proposed by the decedent's executors is not in the best interests of the decedent's estate, or of the persons interested therein; That such a dissolution would extend over a considerable time, substantial sales and legal costs would be entailed, and the large and extensive real property holdings of each of said corporations would be placed on the market for sale under forced sales conditions, and under said conditions of sale said extensive properties would not return their fair market value; That if this court orders said execu-

tors to sell all of the shares of the decedent's estate in Mid-state Horticultural Company for a minimum sales price of $260.00 per share and orders said executors to sell all of the shares of the decedent's estate in Delkar Vineyards, Inc., for a minimum sales price of $2,150.00 per share, and if said executors obtain such respective minimum selling prices for all of said shares, the decedent's estate will realize and receive a far greater net financial return thereby than it would realize or receive through a voluntary dissolution of said corporations.''

This finding is supported by substantial evidence and cannot be here disturbed.

While the notice of appeal herein indicates that the executors appeal from an order construing the will of the testator, defining the executors' liability on loans and their position on court petition, appellants do not raise objections to these orders in their brief and state that they are minor in comparison as the order directing the sale of corporate stock necessarily disposes of all the assets of the estate. Under these circumstances we do not here pass upon the validity of the order in this connection, made by the court on January 20, 1955.

The order for the sale of the corporate stock of Mid-State and Delkar Corporations, dated February 15, 1955, is affirmed.

Barnard, P. J., and Griffin, J., concurred.

A petition for a rehearing was denied May 14, 1956, and appellants' petition for a hearing by the Supreme Court was denied June 6, 1956.